FORM 1.997.    Civil Cover Sheet

This civil cover sheet and the information contained in it do not replace or supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075. (See instructions for completion).

## I.    CASE STYLE

In the Circuit Court of the 17th Judicial Circuit, In and For Broward County, Florida

**14**

C. JOSEF ROSEN,
Petitioner,

Case #:  **1 1 - 2 6 3 1 6**

vs.

SERVICE CORPORATION INTERNATIONAL,
SCI FUNDERL AND CEMETERY PURCHASING
COOPEATIVE, INC., et al.,
Respondents.

Judge:

A TRUE COPY

OCT 28 2011

## II.    TYPE OF CASE

If the case fits more than one type of case, select the most definitive category. If the most descriptive label is a subcategory (indented under a broader category), place an x in both the main category and subcategory boxes.

_____Condominium
_X_Contracts and indebtedness
_____Eminent domain
_____Auto negligence
_____Negligence-other
    _____Business governance
    _____Business torts
    _____Environmental/Toxic tort
    _____Third party indemnification
    _____Construction defect
    _____Mass tort
    _____Negligent security
    _____Nursing home negligence
    _____Premises liability – commercial
    _____Premises liability – residential
_____Products liability
_____Real property/Mortgage foreclosure
    _____Commercial foreclosure $10-$50,000
    _____Commercial foreclosure $50,001-$249,999
    _____Commercial foreclosure $250,000 or more
    _____Homestead residential foreclosure $0-$50,000
    _____Homestead residential foreclosure $50,000-$249,999
    _____Homestead residential foreclosure $250,000 or more
    _____Non-homestead residential foreclosure $0-$50,000
    _____Non-homestead residential foreclosure $50,001-$249,999

_____Non-homestead residential foreclosure $250,000 or more
    _____Other real property actions $0-$50,000
    _____Other real property actions $50,001-$249,000
    _____Other real property actions $250,000 or more
_____Professional malpractice
    _____Malpractice-business
    _____Malpractice-medical
    _____Malpractice-other professional
_____Other
    _____Antitrust/Trade regulation
    _____Business transactions
    _____Constitutional challenge – statute or ordinance
    _____Constitutional challenge – proposed amendment
    _____Corporate trusts
    _____Discrimination – employment or other
    _____Insurance claims
    _____Intellectual property
    _____Libel/Slander
    _____Shareholder derivative action
    _____Securities litigation
    _____Trade secrets
    _____Trust Litigation

[00088176.1 ]

III.    **REMEDIES SOUGHT** (check all that apply):
        _____ monetary
        __X__ non-monetary declaratory or injunctive relief
        _____ punitive

IV.    **NUMBER OF CAUSES OF ACTION** (specify): [1]

V.    **IS THIS CASE A CLASS ACTION LAWSUIT?**
        _____ yes
        __X__ no

VI.    **HAS NOTICE OF ANY KNOWN RELATED CASES BEEN FILED?**
        __X__ no
        _____ yes        If "yes",, list all related cases by name, case number and court:

VII.    **IS A JURY TRIAL DEMANDED IN COMPLAINT?**
        _____ yes
        __X__ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature: _____      Fla. Bar #: 389552 _____
            Attorney or Party                 (Bar # if attorney)

Wendy J. Stein, Esquire              October 28, 2011
Type or Print Name                   Date

{00088176.1 }

DELIVERED: 10/31/11

By: _____ CC
Armed Civil Process Agency

## IN THE CIRCUIT COURT OF THE 17ᵗʰ JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

C. JOSEF ROSEN,

                              *Petitioner,*

      **v.**

SERVICE CORPORATION INTERNATIONAL, SCI
FUNERAL AND CEMETERY PURCHASING
COOPERATIVE, INC., SCI HOUSTON MARKET
SUPPORT CENTER, L.P., SCI FUNERAL SERVICES
OF FLORIDA, INC., AMERICAN BURIAL &
CREMATION CENTER OF JENNINGS FUNERAL
HOME, JANE D. JONES, GWEN PETTEWAY,
THOMAS RYAN, CURTIS BRIGGS,

                              *Respondents.*

**PETITION TO COMPEL
ARBITRATION AND
MEMORANDUM OF LAW IN
SUPPORT THEREOF**



**Case No.**

11 - 26316

A TRUE COPY

OCT 28 2011

       Petitioner, C. Josef Rosen ("Rosen"), by and through his undersigned counsel, hereby files his Petition to Compel Arbitration and states as follows:

       1.     At all relevant times, Rosen was an employee of Respondents working at American Burial & Cremation Center of Jennings Funeral Home in Broward County, Florida.

       2.     Respondents Service Corporation International ("SCI"), SCI Funeral and Cemetery Purchasing Cooperative, Inc. and SCI Houston Market Support Center, L.P. are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

       3.     Respondent SCI Funeral Services of Florida, Inc. is a Florida corporation affiliated with SCI.

       4.     Respondent American Burial & Cremation Center of Jennings Funeral Home is a location of SCI Funeral Services of Florida, Inc. operating in Broward County, Florida.

       5.     Respondent Jane D. Jones has acted as Vice President of Human Resources for SCI since 2005.

{00088137.1}

6.      Respondent Gwen Petteway is HR Director for the Corporate HR Strategic Delivery Team.

7.      Respondent Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

8.      Respondent Curtis Briggs is President and/or Vice President of various entities owned by SCI.

9.      As a condition of Rosen's employment, Rosen entered into an Agreement with Respondents in which the parties agreed to arbitrate all disputes arising out of Rosen's employment.  A copy of an Agreement substantially similar to the Agreement Rosen and Respondents entered into is attached hereto as **Exhibit A.**

10.     Rosen served a Demand for Arbitration on Respondents on September 30, 2011, a copy of which is attached hereto as **Exhibit B**.

11.     Respondents have not responded to the Demand for Arbitration or otherwise indicated their willingness to arbitrate Rosen's claims.

12.     Further, since Rosen has not litigated his claims, there has been no waiver of Rosen's right to arbitrate.

## MEMORANDUM OF LAW

### I.      FACTUAL BACKGROUND

Rosen is seeking to arbitrate his individual claims for unpaid overtime and other wages due under the Fair Labor Standards Act ("FLSA") and applicable state law and common law against Service Corporation International and the other named respondents (hereinafter collectively referred to as "SCI"), who are providers of funeral services.

Rosen was employed by SCI as a Funeral Director at the American Burial & Cremation Center of Jennings Funeral Home in Oakland Park, Florida from approximately September 2007 until March 24, 2011.  Rosen was an hourly employee, and as such, was entitled to

(00088137.1)

- 2 -

overtime pay under the FLSA and applicable state and common law.   Throughout the course of Rosen's employment, SCI regularly suffered or permitted Rosen to work overtime but did not compensate him for all overtime hours worked.

Upon commencement of employment, SCI routinely required its employees to sign Arbitration Agreements (hereinafter "Agreement") as a condition of employment. (*see* **Ex. A**).[1] The Agreement provides that, except for two circumstances not applicable here,[2] disputes relating to employment are subject to arbitration:

> Employee and the Company agree that, except for the matters identified in Section 2 below and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

(**Ex. A**, p.1).  Rosen's claims in the instant action fall squarely within the scope of the Agreement and must therefore be arbitrated.

In accordance with the terms of the Agreement, Rosen served a Demand for Arbitration on SCI on September 30, 2011 (*see* **Ex. B**).  As of the date of this Petition, SCI has failed to respond to the Demand for Arbitration or otherwise indicate its willingness to arbitrate Rosen's claims.  SCI has therefore neglected or refused to comply with the Agreement, and Rosen

---

[1]      Upon commencement of employment, SCI routinely required its employees, such as Rosen, to sign arbitration agreements.  The version attached is from an employee who also worked in Florida and is dated from approximately the same time period as when Rosen began his employment with SCI.  As a former employee, Rosen does not have access to his executed arbitration agreement, which is in SCI's exclusive custody and control.

[2]      Pursuant to Section 2 of the Agreement, claims for workers' compensation or unemployment benefits or claims brought to enforce any non-competition or confidentiality agreement between the parties are not governed by the Agreement.  No such claims are at issue here.

{00088137.1 }

- 3 -

requests that this Court issue an Order directing SCI to proceed with arbitration in accordance with the terms of the Agreement.

Further, Rosen has never raised these claims in any litigation. Instead, he served a Demand for Arbitration in accordance with the terms of the Agreement. In addition, Rosen's Demand for Arbitration was timely served in accordance with the terms of the Agreement.

## II.    ARGUMENT

### A. Public Policy Favors Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, governs employment contracts such as the one at issue here between Rosen and SCI. *See generally Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359. 1367 (11th Cir. 2005). The FAA evinces a strong federal preference for disputes to be settled in arbitration as opposed to litigation. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-23 (1983). Similarly, Florida public policy favors arbitration, and all doubts regarding arbitrability should be resolved in favor of arbitration. *City Group, Inc. v. Boles*, 914 So. 2d 23, 25 (Fla. 4th DCA 2005); *Ronbeck Const. Co., Inc. v. Svana Club Corp.*, 592 So. 2d 344, 346 (Fla. 4th DCA 1992).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Creative Tile Marketing, Inc. v. SICIS Intern., S.r.L.*, 922 F. Supp. 1534, 1539 (S.D. Fla. 1996) (*quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *see also Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (FAA requires courts to rigorously enforce arbitration agreements). The FAA requires a court to compel arbitration upon a showing that a valid written arbitration agreement exists and the claims at issue fall within the scope of the agreement. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

{00068137.1 }

- 4 -

Here, a valid arbitration agreement exists encompassing the wage and hour dispute at issue in this action, thus requiring the Court to compel arbitration.

**B. The Arbitration Agreement is Valid and Covers the Claim at Issue Here**

It is beyond dispute that the Agreement is valid and encompasses the claims at issue. The Agreement here is broad in scope and, with the exception of a few exclusions not applicable here, encompasses all of Rosen's claims related to his employment with SCI. Where such broad language is used, like that found in the Agreement, then all related claims will be subject to arbitration. *See, e.g., Mercury Telco Group, Inc. v. Empresa De Telcommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009) (recognizing that courts facing broad arbitration clauses should resolves all doubts in favor of arbitration). If both parties agree that the arbitration agreement is valid and applicable, as here, then the court should compel arbitration.

SCI has conceded as much in moving to dismiss an action filed by employees who worked at locations in Indiana and who sought to litigate similar wage and hour claims for unpaid overtime (*see* Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) ("Indiana Motion")) (attached hereto as **Ex. C**).[3] In its Indiana Motion, SCI conceded that the Agreement is valid and enforceable and expressly covers the employees' claims. *Id.* Accordingly, there is no dispute that the similar claims in this action are likewise arbitrable.

Where neither party disputes the validity of the arbitration agreement or its applicability to the issues presented, there is no choice but to order arbitration of the dispute. Therefore, because the Agreement expressly covers the claims at issue here, this Court should compel arbitration.

---

[3]     The Indiana Motion was filed in *Reynolds, et al. v. Serv. Corp. Int'l et al.*, Case No. 10-cv-1552 WTL-TAB ("*Reynolds*") (Dkt. No. 24).
{00088137.1}

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL 33394

### C. **Respondents are Bound by the Arbitration Agreement**

Similarly, Respondents cannot dispute that they are bound by the Agreement. The Agreement itself, as well as Respondents' own actions and representations indicate they are in fact subject to and bound by the Agreement.

First, the express language of the Agreement itself indicates that all of the Respondents named in this action are subject to and bound by the Agreement. The Agreement itself expressly states it applies to "all disputes relating to any aspect of Employee's employment with the Company" including "any claims against the Company, *its affiliates or their respective officers, directors, employees, or agents....*" (*see* **Ex. A**, Section 1). Respondents cannot seriously dispute that Service Corporation International  and the other named entities and individuals here are encompassed by "the Company," its affiliates or their respective officers, directors, employees or agents and, therefore, are bound by the Agreement.

Further, Respondents have sought to enforce the terms of the same Agreement in other actions. In the Indiana action referenced above, the defendants named in that action, to wit: SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc., Jane D. Jones, Gwen Petteway and Thomas Ryan (who are also named as respondents here), sought dismissal of that action due to Agreements substantively identical to the Agreement at issue here. Defendants in the Indiana action averred "as a condition of their employment (or continued employment), each Plaintiff entered into the Principles of Employment & Arbitration Procedures, wherein each agreed to arbitrate all disputes arising between them, individually, and SCI regarding the associate's employment." (**Ex. C**). Defendants in the Indiana action further represented that the Agreement is valid and enforceable and the "claims are clearly covered by the Arbitration Agreement because they 'relate to' Plaintiffs' employment. Therefore, they must be submitted to binding arbitration pursuant to the FAA." *Id.* at p.7. The Agreements attached to defendants'

{00088137.1}

- 6 -

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL 33394

motion in the Indiana action are substantively identical to the Agreement Rosen seeks to enforce here.

SCI has also sought and succeeded in enforcing the same Agreement in other actions pertaining to employment matters. For example, SCI sought to enforce the same Agreement against a former employee who brought a whistleblower claim in the Southern District of Texas in *Green v. Serv. Corp. Int'l*, 4:06-CV-00833. In *Green*, SCI brought a motion to compel arbitration and stay proceedings. SCI made the following representation in response to plaintiff's argument that the Agreement does not state whether "the Company" refers to SCI or one of its subsidiaries:

> Even assuming for the sake of argument that Plaintiff had some confusion as to whether "the Company" referred to SCI or one of its subsidiaries, SCI and its subsidiaries are clearly "affiliates" of each other. Because the Arbitration Agreement is "susceptible to an interpretation which would cover the dispute at issue," the Arbitration Agreement must be enforced.[4]

Further, on appeal of the order compelling arbitration and confirming the arbitrator's award, the Fifth Circuit affirmed the district court's holding that SCI was "the Company" referred to in the arbitration agreement. *Green v. Serv. Corp. Int'l*, 333 Fed. Appx. 9, 2009 WL 1560035, at *3 (5th Cir. June 2, 2009). SCI succeeded in convincing the Court in *Green* that it is "the Company" referred to in the Agreement and is therefore bound by the Agreement. This Court should therefore reject any attempt by SCI to assume a contrary position here simply because its interests have changed. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding") (internal quotations and citations omitted).

---

[4]    *See* Defendant Service Corporation International's Reply in Support of its Motion to Compel Arbitration and Stay Proceedings filed in *Green* at p.2, attached hereto as part of **Ex. D.**
{00088137.1}

- 7 -

Hence, Respondents are bound by the Agreement, and this Court should issue an Order compelling arbitration.

## III.   CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court issue an Order compelling arbitration of Petitioner's claims.

Dated: October 28, 2011

FBN 389552

Wendy J. Stein, Esq.
**KELLER LANDSBERG PA**
Broward Financial Centre
500 E. Broward Boulevard, Suite 1400
Fort Lauderdale, FL  33394
Phone: (954) 761-3550
Fax: (954) 525-2134
*Counsel for Plaintiff*

**THOMAS & SOLOMON LLP**
Sarah Cressman
Laura Meyers
Annette Gifford
693 East Avenue
Rochester, New York 14607
Phone: (585) 272-0540
Fax: (585) 272-0574
*Of Counsel to apply for*
*Pro Hac Vice Admission*

{00038137.1 }

- 8 -

# EXHIBIT A

## Principles of Employment & Arbitration Procedures

Your employer, identified below (the "Company"), recognizes that its employees are its most valuable assets and are vital to its success. We also recognize the importance of treating our employees with the utmost dignity and respect. We believe in the principles of honesty, fairness and respect for individual freedoms, and are committed to upholding the highest standards of professionalism and integrity in our operations. For these reasons, we have adopted certain policies governing workplace conduct.  The Company is committed to strict compliance with these policies and asks all of its employees to agree to abide by these policies as well.  A recap of some of these policies (which are more fully described in the Company's Employee Handbook) follows:

- We are an equal opportunity employer.  Discrimination based upon an individual's race, color, religion, national origin, gender, age or disability will not be permitted or tolerated.

- Our policy against harassment, including sexual harassment, was designed to provide a comfortable and professional working environment for everyone.  It prohibits harassment of any kind in our workplace, especially if it is based upon the factors listed above.

- Our Problem Solving Procedure gives you the right to discuss any work-related problems with management and expect a timely and reasonable response.  In the event that you are not satisfied with that response, you have the right to appeal to successively higher levels of management, up to the President of the Company.

- We prohibit retaliation against any employee for exercising his/her rights under company policy or the law.  Employees who feel that they are being retaliated against should bring their concern to management's attention immediately for prompt action.

- We are committed to maintaining a safe, healthful and productive working environment for all of our employees.  In keeping with that goal, we have adopted a strict policy prohibiting the use, possession or sale of alcohol or illegal drugs while on Company property, on Company business or while operating a Company-owned vehicle.  We have also adopted a policy prohibiting weapons in the workplace.

- We have established an Employee Assistance Program, which provides a confidential counseling and referral service designed to help you and your family deal with various personal problems.  Also, in the interest of promoting better communication between the Company and its employees, and to facilitate the identification and resolution of workplace problems, we have established a confidential, toll-free telephone number (800-455-1140) to allow employees to express any concerns they have pertaining to workplace issues.

The purpose of the above policies is to assure fair, safe and pleasant working conditions for all of the Company's employees.  However, we recognize that disputes may arise from time to time, which must be resolved in a fair and efficient manner.  In order to ensure equitable, efficient and cost-effective resolution of these matters, employment-related disputes (other than those specifically excluded below) will be resolved by arbitration, in accordance with the following procedures:

1.    <u>Matters Subject To Arbitration</u>.  Employee and the Company agree that, except for the matters identified in Section 2 below and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with the Company shall be resolved by binding arbitration.  This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement.  The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A."  This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

_____
Employee Initials

_____
Initials of Company
Representative

(06/05) HR-146

SCI-S010366

2.   Exclusions.  It is expressly agreed and understood that this Agreement shall not govern claims for workers' compensation or unemployment benefits, or claims brought to enforce any non-competition or confidentiality agreement which may exist between the parties.

3.   Notification/Timeliness Of Claims.  Any claim which either party has against the other must be presented in writing by the claiming party to the other within the time provided by any applicable statutes of limitation.  The request must specifically state that arbitration is being requested.

4.   Legal Counsel/Costs.  Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration; provided however, that the arbitrator may award attorneys' fees to the prevailing party when expressly authorized by statute to do so.  All other costs pertaining to the arbitration shall be paid by the Company.

NOTICE TO EMPLOYEE:  BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN SECTION 2 ABOVE AND THOSE OTHERWISE EXCLUDED BY APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND YOU ARE WAIVING YOUR RIGHT TO A JURY OR COURT TRIAL.

AFFIRMATION OF AT-WILL EMPLOYMENT STATUS.  THE PARTIES ACKNOWLEDGE AND AGREE THAT, UNLESS THEY ARE PARTIES TO A WRITTEN EMPLOYMENT AGREEMENT WHICH GUARANTEES EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, EMPLOYEE IS AN EMPLOYEE TERMINABLE AT-WILL, AND THAT THE COMPANY MAY ALTER THE TERMS OF, OR TERMINATE, EMPLOYEE'S EMPLOYMENT IN ITS SOLE DISCRETION, FOR ANY REASON OR NO REASON.  EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE IS EMPLOYED BY THE COMPANY IDENTIFIED BELOW AND NOT BY SUCH COMPANY'S ULTIMATE PARENT COMPANY, SERVICE CORPORATION INTERNATIONAL, OR ANY OTHER AFFILIATE OF THE COMPANY.

MODIFICATIONS/SEVERABILITY.  NEITHER EMPLOYEE'S AT-WILL STATUS NOR ANY OF THE ABOVE PROVISIONS PERTAINING TO ARBITRATION MAY BE MODIFIED EXCEPT BY A WRITTEN AGREEMENT SIGNED BY BOTH EMPLOYEE AND THE COMPANY.  SHOULD ANY PART OF THIS AGREEMENT BE DECLARED BY A COURT OF COMPETENT JURISDICTION TO BE UNLAWFUL, SUCH UNLAWFUL PROVISION SHALL BE CONSIDERED SEVERED FROM THIS AGREEMENT AND THE REMAINING PROVISIONS OF THIS AGREEMENT SHALL REMAIN IN FULL FORCE AND EFFECT.

I have read the above, am familiar with its terms and agree that my relationship with my employer shall be governed thereby.

EMPLOYEE:

Signature: _Sharon Dixon_

Print Name: _Sharon A Dixon_

Date: _June 12 2007_

COMPANY:

Signature: _[signature]_

Print Name: _John P Johnson_

Title: _Sales Manager_

Date: _6-12-07_

(06/05) HR-146                    2

SCI-S010367

## EXHIBIT "A"

## ARBITRATION PROCEDURES

1.   <u>Selection of Arbitrator</u>.  An arbitrator shall be selected by mutual agreement of the parties.  If the parties are unable to agree on a single arbitrator, each party shall select one arbitrator, and the two arbitrators so selected shall select a third arbitrator.  The three arbitrators so selected will then hear and decide the matter.

2.   <u>Qualification of Arbitrators</u>.  All arbitrators must be attorneys, judges or retired judges who are licensed to practice law in the state where the Employee is or most recently was employed by the Company.

3.   <u>Location of Arbitration Proceedings</u>.  The arbitration proceedings shall be conducted within the county in which Employee is or most recently was employed by the Company or at another mutually agreeable location.

4.   <u>Procedural Rules</u>.  Except as otherwise provided herein, the arbitration proceedings shall be conducted in accordance with the statutes, rules or regulations governing arbitrations in the state in which Employee is or most recently was employed by Employer.  In the absence of such statutes, rules or regulations, the arbitration proceedings shall be conducted in accordance with the employment arbitration rules of the American Arbitration Association ("AAA"); provided however, that the foregoing reference to the AAA rules shall not be deemed to require any filing with that organization, nor any direct involvement of that organization.  In the event of any inconsistency between this Agreement and the statutes, rules or regulations to be applied pursuant to this paragraph, the terms of this Agreement shall apply.

5.   <u>Award</u>.  The arbitrator(s) shall issue a written award, which shall contain, at a minimum, the names of the parties, a summary of the issues in controversy, and a description of the award issued.  Upon motion to a court of competent jurisdiction, either party may obtain a judgment or decree in conformity with the arbitration award, and said award shall be enforced as any other judgment or decree.

6.   <u>Applicable Law</u>.  In resolving claims governed by this agreement, the arbitrator shall apply the laws of the state in which the Employee is or most recently was employed by the Company, and/or federal law, if applicable.

7.   <u>Confidentiality</u>.  The parties agree and acknowledge that any arbitration proceedings between them, and the outcome of such proceedings, shall be kept strictly confidential; provided however, that the Company may disclose such information to the extent required by law and to its employees, agents and professional advisors who have a legitimate need to know such information, and the Employee may disclose such information (1) to the extent required by law, (2) to the extent that the Employee is required to disclose same to professional persons assisting Employee in preparing tax returns, and (3) to Employee's legal counsel.

SCI-S010368

# EXHIBIT B

## DEMAND FOR ARBITRATION

September 30, 2011

I. **Parties**

    A. **Claimant:**

        1.    Name: C. Joseph Rosen

        2.    Address: c/o Thomas & Solomon LLP, 693 East Ave., Rochester, NY 14607.

        3.    Phone number: (585) 272-0540.

        4.    E-mail addresses: nthomas@theemploymentattorneys.com; lmeyers@theemploymentattorneys.com; agifford@theemploymentattorneys.com; scressman@theemploymentattorneys.com.

    B. **Respondents:**

        5.    Names: Service Corporation International; SCI Funeral and Cemetery Purchasing Cooperative, Inc.; SCI Houston Market Support Center, L.P.; SCI Funeral Services of Florida, Inc.; Jane D. Jones; Gwen Petteway; Thomas Ryan; Curtis Briggs.

        6.    Address: 1929 Allen Parkway, Houston, TX, 77019.

        7.    Name: American Burial & Cremation Center at Jennings Funeral Home.

        8.    Address: 1801 East Oakland Park Boulevard, Fort Lauderdale, FL 33306.

II. **Nature of the Dispute**

    9.    This dispute arises out of injuries suffered by the claimant caused by respondents' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") as well as various state laws including state wage and hour and/or breach of contract, fraud or misrepresentation laws.

    10.    Through the paystubs and payroll information they provide to employees through the mail and otherwise, respondents deliberately conceal from their employees, including claimant, that employees do not receive proper compensation for all work performed and misleads them into believing they are paid properly. The payroll checks sent every pay period are false and deceptive because they mislead employees about the amount of wages to which they are entitled, as well as their status and rights under state and federal law.

    11.    Some or all of claimant's claims are subject to tolling.

DEMAND FOR ARBITRATION
SEPTEMBER 30, 2011

### III. Amount in Controversy

12.     Claimant expects that individual recovery will be less than $100,000.

### IV. Remedies Sought

13.     Claimant seeks the following remedies:

    (a)     An agreement that respondent will change its unlawful and deceptive policies.

    (b)     An award of the value of claimant's unpaid wages, including fringe benefits.

    (c)     Statutory penalties and liquidated damages.

    (d)     An award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating claimant's rights.

    (e)     An award of pre- and post-judgment interest.

    (f)     Such other and further legal or equitable relief as the Arbitrator deems to be just and appropriate.

### V. Hearing Location

14.     The arbitration proceedings shall be conducted within the county in which claimant is or most recently was employed by respondents.

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER REYNOLDS, *et al.*,    ) | |
|                        ) | |
|         Plaintiffs,    ) | |
|                        ) | |
| v.                     ) | Case No. 10-cv-1552 WTL-TAB |
|                        ) | |
| SERVICE CORPORATION    ) | |
| INTERNATIONAL, *et al.*,     ) | |
|                        ) | |
|         Defendants.    ) | |
|                        ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(1)**

     Defendants Service Corporation International, *et al.* (collectively, "Defendants" or "SCI") submit this Memorandum in Support of Their Motion to Dismiss Plaintiffs' Complaint (Doc.1-1) because Plaintiffs failed to submit their respective claims to arbitration as required by their Arbitration Agreements.

## INTRODUCTION

     On or about October 5, 2010, Plaintiffs Christopher Reynolds, Douglas Elsler, and Kay Homier ("Plaintiffs"), each former employees ("associates") of SCI, brought this court action, alleging breach of contract and other violations concerning their employment. However, as a condition of their employment (or continued employment), each Plaintiff entered into the Principles of Employment & Arbitration Procedures, wherein each agreed to arbitrate all disputes arising between them, individually, and SCI regarding the associate's employment (the "Arbitration Agreement"). The present lawsuit directly violates the Arbitration Agreements as each claims that SCI failed to properly pay for all hours worked during their employment.

9776544.1 (OGLETREE)

Therefore, Plaintiffs are precluded from maintaining this action before this Court or any other by each associate's own agreement to submit all such claims to binding arbitration. Accordingly, Defendants move to dismiss this case for lack of subject matter jurisdiction.

## BACKGROUND

At the beginning of, or during, their employment, each Plaintiff executed an Arbitration Agreement as a condition of employment (or continued employment). (True and correct copies of the Arbitration Agreements in effect during Plaintiffs' employment are attached hereto, as Exhibits 1 and 2, along with the Arbitration Procedures, which are attached to the Arbitration Agreements.) Under the Arbitration Agreement, each Plaintiff agreed to arbitrate all claims or controversies related to their employment, as follows:

> 1. Matters Subject to Arbitration. Associate and the Company agree that, except for the matters identified in Section 2[1] below and except as otherwise provided by law, all disputes relating to any aspect of Associate's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, associates, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

Arbitration Agreement, Exhibit 1, at 1; *see also* Exhibit 2, at 1. On the same page as each associate's signature, the Arbitration Agreement emphasizes and clarifies that the associate is waiving any right to a jury or court trial:

---

[1] Though none of the conditions apply here, the matters excluded from arbitration under Section 2 are as follows:

> 2. Exclusions. It is expressly agreed and understood that this Agreement shall not govern claims for workers' compensation or unemployment benefits, or claims brought to enforce any non-competition or confidentiality agreement which may exist between the parties.

*Id.* at 2.

2

> **NOTICE TO ASSOCIATE**: BY SIGNING THIS AGREEMENT, YOU ARE
> AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND
> YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN
> SECTION 2 AND THOSE OTHERWISE EXCLUDED BY APPLICABLE
> LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND YOU ARE
> WAIVING YOUR RIGHT TO A JURY OR COURT TRIAL.

*Id.* at 2. (Emphasis in original); *see also* Exhibit 2 at 2.

In January 2008, Plaintiffs' counsel filed a case in Arizona alleging FLSA and other violations against Defendants in *Stickle, et al v. SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc.; SCI Eastern Market Support Center, L.P.; SCI Houston Market Support Center, L.P.; SCI Funeral and Cemetery Purchasing Cooperative, Inc.; Service Corporation International; Jane D. Jones; Gwen Peeteway; Thomas Ryan; Curtis Briggs; The SCI 401K Retirement Savings Plan; and Julie Douglas,* ("*Stickle*").[2] The allegations of the *Stickle* Complaint are virtually identical to the Complaint here. *See Stickle* Complaint, Doc.1, at Ex. B.[3] The Plaintiffs in this action opted-in to the *Stickle* action on October 30-31, 2009.[4]

On June 15, 2010, each Plaintiff reaffirmed his/her obligation to arbitrate the disputes alleged in this action by sending a "demand" for arbitration to SCI ("Demand"). (True and correct copies of each Plaintiff's Demand are attached hereto, as Exhibits 6-8.) Despite submitting their Demands to SCI, Plaintiffs did not dismiss their claims in *Stickle*.

Plaintiffs now claim that Defendants failed to properly pay them for all hours worked. Their claims fall squarely within the scope of the Arbitration Agreement and must therefore be dismissed.

---

[2] United States District Court in and for the District of Arizona, Case No. 2:08-cv-00083-MHM.
[3] *See also Id*, at Doc. 1.
[4] *See Id,* at Doc. 335, 336 and 444. (True and correct copies are also attached hereto, at Exhibits 3-5.)

3

## ARGUMENT

### I.     Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 1, *et seq.* governs the interpretation

and enforcement of arbitration agreements such as the one between Plaintiffs and SCI. *EEOC v.*

*Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (contracts to arbitrate employment disputes are

covered by the FAA."); *see also Oblix, Inc. v. Winiecke*, 374 F.3d 488, 491 (7th Cir. 2001).

The FAA provides in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration and controversy thereafter
> arising out of such contract or transaction, ... shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for the revocation
> of any contract.

9 U.S.C.A. § 2. The term "involving commerce" is to be construed broadly to include activities

that in any way relate to interstate commerce. *Southland Corp. v. Keating*, 465 U.S. 1, 10

(1984). The Supreme Court has also emphasized that disputes in the employment context are no

different than any other and that agreements to arbitrate employment-related claims are broadly

enforced under the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).

Where the FAA governs an arbitration agreement, it preempts all conflicting state laws.

*Southland*, 465 U.S. 1, at 10 ("In enacting Section 2 of the [FAA], Congress declared a national

policy favoring arbitration and withdrew the power of the states to require a judicial forum for

the resolution of claims which the contracting parties agree to resolve by arbitration."").

Therefore, the FAA preempts any Indiana law (there is none) which might undercut the

enforceability of the Arbitration Agreement between SCI and Plaintiffs. *See Beck's Superior*

*Hybrids, Inc. v. Monsanto Co. and Monsanto Tech. LLC*, No. 29A05-1008-MI-489, 2011 WL

96481 at * 12, ---N.E.2d --- (Ind. Ct. App. Jan. 12, 2011) (held that state courts are obliged to

4

enforce arbitration agreements, but are not bound to follow procedural aspects of FAA) (attached hereto as Exhibit 9).

## II.     Courts Favor Arbitration

The FAA manifests a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). It was enacted to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, an arbitration agreement must be enforced where a valid, written agreement exists and the claims made are within the scope of the agreement. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24-25; *Continental Cas. Co. v. American Nat'l Ins. Co..,* 417 F.3d 727, 731, 734-35 (7th Cir. 2005) (Though the plaintiff was not a party to the arbitration agreement, the court dismissed the action under Fed. R. Civ. P. 12(b)(3) because the plaintiff was a third party beneficiary under the agreement). District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582-583 (1960). Therefore, any doubts regarding the enforceability of the Arbitration Agreement between Plaintiff and SCI should be resolved in favor of arbitration, and this lawsuit should be dismissed.

## III.    The Arbitration Agreement is Valid and Enforceable

Within the FAA's mandate of broad enforceability, state contract law governs whether the parties have a contractually valid agreement to arbitrate. *See First Options of Chicago, Inc.*

5

*v. Kaplan*, 514 U.S. 938, 944 (1995). Here, Indiana contract law supports the validity of the Arbitration Agreement between Plaintiffs and SCI. *See DeGroff v. Masotech Forming Technologies-Fort Wayne*, 179 F.Supp.2d 896, 903 (N.D. Ind. 2001) (citing *Bain v. Board of Trustees of Starke Mem'l Hosp.*, 550 N.E.2d 106, 110 (Ind. Ct. App. 1990)).

The Arbitration Agreement was executed by Plaintiffs as a condition of their (continued) employment. In *Circuit City Stores, Inc.*, the Supreme Court enforced an arbitration agreement contained in an application for employment. 532 U.S. 105, 118 (2001). The Seventh Circuit has likewise upheld arbitration agreements contained in employment applications. *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 489-90 (7th Cir. 2004). Seventh Circuit decisions have also held that a company's promise of continued employment constitutes adequate consideration to enforce an arbitration agreement that was executed after the commencement of employment. *See Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002) *citing Gibson v. Neighborhood Health Sys.*, 121 F.3d 1126, 1130 (7th Cir. 1997). Indeed, this Court has enforced agreements like the one at issue here. *See e.g., Easterly v. Heritage Christian Schools, Inc.*, No. 1:08cv1714, slip op., 2009 WL 2750099 at *4 (S.D. Ind. Aug. 26, 2009) (J. Lawrence) (Court upheld arbitration policy contained in plaintiff's contract that was renewed several years after she began employment) (attached hereto as Exhibit 10); *Baumann v. The Finish Line, Inc.*, No. 1:08cv1385, slip op., 2009 WL 2750094 at * 4 (S.D. Ind. August 26, 2009) (court dismissed action upon finding adequate consideration to arbitrate based upon the company's agreement to continue plaintiff's at-will employment upon execution of arbitration agreement) (attached hereto as Exhibit 11) (citing *Ackerman v. Kimball Int'l, Inc.*, 634 N.E.2d 778, 781 (Ind. Ct. App. 1994), *aff'd,* 652 N.E.2d 507, 509 (Ind. 1995) (continued at-will employment sufficient consideration for non-compete agreement under Indiana law)).

6

As this Court recognized in *Easterly* and *Baumann*, the parties' mutual agreements to arbitrate, along with the associates' continued at-will employment relationship, provide the requisite consideration to enforce the agreement. *Easterly,* 2009 WL 2750099 at *4; *Baumann,* 2009 WL 2750094 at * 4. Each Plaintiffs executed his/her own Arbitration Agreement and provided work under the terms of that Arbitration Agreement. Therefore, Plaintiffs consented to be bound by the Arbitration Agreement and it is enforceable to dismiss their action in this judicial forum.

### IV. The Arbitration Agreement Expressly Covers Plaintiffs' Claims

The Arbitration Agreement is unambiguous and is sufficiently broad to cover Plaintiffs' claims. The Arbitration Agreement applies to any **"all disputes relating to any aspect of Associate's employment with the Company..."** (*See* Exhibit 1) (emphasis added). The Arbitration Agreement's broad scope is further demonstrated by the parties' explicit waiver of the **"RIGHT TO A JURY OR COURT TRIAL."** *(Id.)* (Emphasis in original.) The parties expressly intended arbitration to be the exclusive remedy for all claims relating to Plaintiffs' employment. In their Complaint, Plaintiffs allege various wage and hour violations regarding their employment by SCI. These claims are clearly covered by the Arbitration Agreement because they "relate to" Plaintiffs' employment. Therefore, they must be submitted to binding arbitration pursuant to the FAA.

7

## CONCLUSION

By signing the Arbitration Agreement, Plaintiffs agreed to arbitrate all disputes with SCI in any way related to their employment, and Plaintiffs' claims clearly fall within the scope of that Agreement. This Court's own precedent holds that in such an instance, the FAA requires that Plaintiffs' claims be dismissed. Accordingly, Defendants respectfully request an order dismissing this case in its entirety for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[5]

RESPECTFULLY SUBMITTED this 4th day of February, 2011.

s/Christopher C. Murray

Christopher C. Murray, Attorney No. 26221-49
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone: (317) 916-1300
Facsimile: (317)916-9076
christopher.murray@ogletreedeakins.com

Lonnie J. Williams, Jr.
(To be Admitted *Pro Hac Vice*)
Stinson, Morrison Hecker LLP
1850 N. Central Ave.
Suite 2100
Phoenix, Arizona 85004
Tel. (602) 212-8505
Fax (602) 586-5272
lwilliams@stinson.com

Attorneys for Service Corporation International,
SCI Funeral and Cemetery Purchasing
Cooperative, Inc., SCI Eastern Market Support
Center, L.P., Jane D. Jones, Gwen Petteway,
and Thomas Ryan

---

[5] Where, as here, all of the Plaintiffs' claims are arbitrable, dismissal is the appropriate method of enforcing a valid arbitration agreement. *See DeGroff v. Mascotech Forming Technologies-Fort Wayne, Inc.* 179 F. Supp.2d 896, 914 n. 20 (N.D. Ind. 2001).

8

9778544.1 (OGLETREE)

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing document was filed with the Court's ECF system with service to be accomplished electronically this 4th day of February, 2011 to the following:

Amy Ficklin DeBrota
THE DEBROTA LAW FIRM LLC
715 E. 107th St.
Indianapolis, IN 46280
amy@debrotalaw.com

J. Nelson Thomas
Annette Gifford
Sarah Cressman
THOMAS & SOLOMON LLP
639 East Ave.
Rochester, NY 14607
nthomas@theemploymentattorneys.com
agifford@theemploymentattorneys.com
scressman@theemploymentattorneys.com

s/Christopher C. Murray
Christopher C. Murray, Attorney No. 26221-49
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone: (317) 916-1300
Facsimile: (317)916-9076
christopher.murray@ogletreedeakins.com

9776544.1 (OGLETREE)

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILIP W. GREEN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:06-CV-00833 |
| | § | |
| SERVICE CORPORATION | § | |
| INTERNATIONAL | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT SERVICE CORPORATION INTERNATIONAL'S
## MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant, Service Corporation International ("SCI"), files this Motion to Compel Arbitration and Stay Proceedings during the arbitration pursuant to sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3 & 4 and in accordance with the written arbitration agreement between SCI and Plaintiff, Philip W. Green ("Plaintiff"). In support of this Motion, SCI shows the following:

### I.    INTRODUCTION AND BACKGROUND FACTS

Plaintiff filed this lawsuit against SCI alleging that SCI retaliated against him and terminated his employment in violation of the Corporate and Criminal Fraud Accountability Act, also known as the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. SCI denies that it violated the Sarbanes-Oxley Act in any way. However, this matter is not properly before this Court because an arbitration agreement between the parties to this litigation requires that this matter be resolved through binding arbitration, and not in this Court.

1

On March 6, 2001, Plaintiff entered into a Principles of Employment & Arbitration

Procedures Agreement (hereinafter "Arbitration Agreement") with SCI, a copy of which is

attached as Exhibit A, which expressly states as follows:

> 1.     Matters Subject To Arbitration.  Employee and the Company agree that,
> except for the matters identified in Section 2 below and except as otherwise
> provided by law, **all disputes related to any aspect of Employee's employment
> with the Company shall be resolved by binding arbitration**.  This includes, but is
> not limited to, **any claims against the Company, its affiliates** or their respective
> officers, directors, employees, or agents for breach of contract, **wrongful
> discharge**, discrimination, harassment, defamation, misrepresentation,  and
> emotional distress, **as well as any disputes pertaining to the meaning or effect of
> this Agreement**.  The arbitration shall be conducted in accordance with the
> procedures attached hereto as Exhibit "A."  This agreement to arbitrate shall
> cover disputes arising both before and after the execution of this document,
> except to the extent that any litigation has already been filed as of the date hereof.

> 2.     Exclusions.  It is expressly agreed and understood that this Agreement
> shall not govern claims for workers' compensation or unemployment benefits, or
> claims brought to enforce any noncompetition or confidentiality agreement which
> may exist between the parties.

> . . .

> **NOTICE TO EMPLOYEE: BY SIGNING THIS AGREEMENT, YOU ARE
> AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND
> YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN
> SECTION 2 ABOVE AND THOSE OTHERWISE EXCLUDED BY
> APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION
> AND YOU ARE WAIVING YOUR RIGHT TO A JURY OR COURT
> TRIAL.**

> . . .

> I have read the above, am familiar with its terms and agree that my relationship
> with my employer shall be governed thereby.

*Arbitration Agreement, p. 2-3* (emphasis added) (Exhibit A); *Declaration of Karen Johnson,* ¶3

(Exhibit B); *Deposition of Philip W. Green, p. 73, l. 16-p. 74, l. 18* (Exhibit C).  Plaintiff signed

the Arbitration Agreement on March 6, 2001.  *Arbitration Agreement, p. 3* (Exhibit A); *Green

Depo., p. 74, l. 3-13* (Exhibit C).

2

Plaintiff's claims cannot be pursued in this Court because Plaintiff contractually agreed to submit "all disputes relating to any aspect of Employee's employment" to binding arbitration. Thus, the Arbitration Agreement requires that Plaintiff's claim in this action must be resolved through binding arbitration, and not before this Court. Under the FAA, this case must therefore be stayed so that Plaintiff may pursue his claims (if at all) through arbitration.

## II.     ISSUES PRESENTED AND STANDARD OF REVIEW

The issues in the Motion are: (1) Whether Plaintiff should be compelled to arbitrate his Sarbanes-Oxley Act claim against SCI pursuant to the written Arbitration Agreement, and (2) Whether this Court should stay this case pending arbitration. A district court's ruling on a motion to compel arbitration and stay litigation is reviewed *de novo*. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003).

## III.    ARGUMENT AND AUTHORITIES

**A.     Plaintiff Is Required To Pursue His Claim Against SCI, If At All, In Binding Arbitration.**

1.      Standard For Arbitrability

The FAA provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Guided by the FAA's animating purpose, the Supreme Court has repeatedly held that arbitration agreements are to be read liberally to effect their purpose. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000); *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63 (1995); *Gilmer*, 500 U.S. at 24. As the Supreme Court held in *Mastrobuono*, when a court interprets an arbitration

3

provision, "due regard must be given to federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration." *Mastrobuono*, 514 U.S. at 62. Indeed, arbitration should not be denied "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 298, 294 (5th Cir. 2005); *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (same).

Consistent with the strong federal policy favoring arbitration, the Fifth Circuit "resolve[s] any ambiguity as to the availability of arbitration in favor of arbitration." *Safer*, 422 F.3d at 294. The Fifth Circuit has held that courts should perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (ruling that a defense should have been submitted to arbitration and that court erred in addressing the merits of the defense). First, the court must determine whether the parties agreed to arbitrate the dispute. *Id.* Once the court finds that the parties agreed to arbitrate, it must then consider whether any federal statute or policy renders the claims not arbitrable. *Id.* Importantly, when conducting this analysis, the court may not consider the merits of the underlying action. *Id.*

Under these guiding principles, SCI is entitled to enforce the Arbitration Agreement between SCI and Plaintiff and require Plaintiff to pursue his Sarbanes-Oxley Act whistleblower claim, if at all, in binding arbitration.

2.    A Valid Arbitration Agreement Exists Between The Parties And Covers Plaintiff's Sarbanes-Oxley Act Whistleblower Claim Against SCI.

Under the FAA, an arbitration agreement is presumed to be "valid ... and enforceable." *See Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987) (quoting 9 U.S.C. § 2); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). It is well settled that a party resisting arbitration bears the burden of showing that the arbitration provision does not encompass the claims at issue, or that the clause is invalid. *Green Tree*, 531 U.S. at 92.

As set forth above, Plaintiff entered into and signed a written Arbitration Agreement with SCI. *Arbitration Agreement, pp. 2-3* (Exhibit A). The Arbitration Agreement expressly requires arbitration of "all disputes related to any aspect of Employee's employment" including "any claims against [SCI]...for...wrongful discharge...as well as any disputes pertaining to the meaning or effect of [the Arbitration Agreement]." *Id.* The Fifth Circuit has held that such language in an arbitration provision must be read expansively, and "reach[es] all aspects of the relationship" between the parties. *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998). Thus, an arbitration agreement, such as that here, using language such as "related to" is not "limited to claims that literally arise under the contract, but rather embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Personal Sec. & Safety Inc.*, 297 F.3d at 393.

In Plaintiff's Original Complaint, Plaintiff claims that SCI retaliated against him and wrongfully terminated his employment in violation of the Sarbanes-Oxley Act. Plaintiff's claim plainly constitutes a "dispute relating to any aspect of Employee's employment" including a claim against SCI for "wrongful discharge." Thus, the claim brought by Plaintiff is directly encompassed within the terms of the Arbitration Agreement such that Plaintiff is required to

pursue his claim against SCI, if at all, in arbitration. Furthermore, the arbitration provision, through its use of the words "binding arbitration," is mandatory in nature and *requires* arbitration unless waived by both parties. Accordingly, the Arbitration Agreement between Plaintiff and SCI must be enforced as written.

### 3.    There Is No Federal Statute Or Policy Rendering Sarbanes-Oxley Act Whistleblower Claims Not Subject To Arbitration.

Likewise, there is no federal statute or policy that renders Sarbanes-Oxley Act whistleblower claims, such as the claim brought by Plaintiff against SCI here, not subject to arbitration. With regard to federal statutory claims, the Supreme Court has held that a district court is required to enforce a party's commitment to arbitrate his statutory claims unless the party resisting arbitration can show that Congress intended to preclude arbitration of those claims. *Gilmer*, 500 U.S. at 26. This showing is made by reference to "the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purpose." *Id.*

The U.S. District Court for the Southern District of New York analyzed the arbitrability of Sarbanes-Oxley Act claims with reference to the holding in *Gilmer* and ruled that Sarbanes-Oxley Act whistleblower claims are subject to arbitration and granted an employer's motion to compel. *Boss v. Salomon Smith Barney Inc.*, 263 F. Supp.2d 684, 685 (S.D.N.Y. 2003). In that case, the aggrieved employee argued that because the Act conferred jurisdiction on the federal courts to hear whistleblower claims under the Act in limited circumstances, such claims could not be arbitrated. *Id.* The court rejected the employee's argument and compelled arbitration, citing *Gilmer* and explaining as follows: "There is nothing in the text of the statute or the legislative history of [the Sarbanes-Oxley Act] evincing an intent to preempt arbitration of

6

claims under the Act.   Nor is there an inherent conflict between arbitration and the statute's purpose." *Id.* at 686.

The Second Circuit also recently addressed the arbitrability of Sarbanes-Oxley Act whistleblower claims and held that the issue of arbitrability itself was subject to arbitration. *Alliance Bernstein Investment Research & Management, Inc. v. Schaffran,* __ F.3d __, 2006 WL 945341 (2nd Cir. April 12, 2006) (Exhibit D).  In that case, the employer brought a declaratory judgment action against its former employee, seeking a determination that it was not required to arbitrate an employee's Sarbanes-Oxley Act whistleblower claim against it.  *Id.* at *1.   The Second Circuit rejected the employer's position and held that the issue of arbitrability of the Sarbanes-Oxley Act claim should be determined by arbitration, and not by the court.  *Id.* at *6.

For these reasons, there is no statute or policy basis for precluding arbitration of Plaintiff's Sarbanes-Oxley Act whistleblower claim in this case.  Thus, Plaintiff's claim against SCI must be resolved, if at all, through binding arbitration.

**B.      This Action Should Be Stayed In Its Entirety Pending Arbitration Of Plaintiff's Claims.**

In light of the foregoing, this Court should stay Plaintiff's claims in favor of arbitration. Section 3 of the Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant of the stay is not in default with such arbitration.

9 U.S.C. § 3 (emphasis added).  Thus, Section 3 of the FAA requires courts to stay all aspects of litigation during an arbitration, including discovery, pre-trial proceedings, and trial.  *Mire v. Full Spectrum Lending Inc.,* 389 F.3d 163, 165 (5th Cir. 2001) (holding district court properly stayed

action pending arbitration); *Texaco Exploration & Prod. Co. v. Amclyde Engineered Products,* 243 F.3d 906, 911 (5th Cir. 2001) (holding that district court erred in refusing to stay proceedings pending arbitration).

Accordingly, because the claim raised by Plaintiff in this matter must be arbitrated, SCI requests that the Court enter a stay of all aspects of this action pending arbitration.

## IV.   CONCLUSION

For the reasons set forth above, SCI respectfully requests that the Court enter an Order (i) compelling arbitration by Plaintiff of Plaintiff's claims, and (ii) staying this action in its entirety during the pendency of any arbitration. In addition, SCI requests that all proceedings in this case be stayed pending the resolution of this Motion given that further litigation would be inconsistent with and contrary to SCI's arbitration rights.

Respectfully submitted,

By: _____
    WILLIAM JOHN BUX
    Attorney-In-Charge for Defendant
    Service Corporation International
    State Bar No. 03546400
    S.D. Tex. ID. No. 7396
    600 Travis St., Suite 3400
    Houston, Texas 77002-3095
    (713) 226-1275
    (713) 223-3717 (Fax)

8

OF COUNSEL FOR DEFENDANT
SERVICE CORPORATION INTERNATIONAL:

LOCKE LIDDELL & SAPP LLP
MIRANDA R. TOLAR
State Bar No. 24029843
S. D. Tex. ID No. 28896
600 Travis St., Suite 3400
Houston, Texas 77002-3095
(713) 226-1618
(713) 223-3717 (Fax)

## CERTIFICATE OF CONFERENCE

I hereby certify that on May 8, 2006, I spoke with David Lopez, counsel for Plaintiff, regarding the relief requested in this Motion. Mr. Lopez represented to me that his client was opposed to the relief requested in this Motion.

_____
William John Bux

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel via certified mail, return receipt requested on this the 11th day of May, 2006:

David T. Lopez
David T. Lopez & Associates
3900 Montrose Blvd.
Houston, Texas 77006

_____
William John Bux

9

# Principles of Employment
# & Arbitration Procedures





## Principles of Employment

Your employer, identified below (the "Company"), recognizes that its employees are its most valuable assets and are vital to its success. We also recognize the importance of treating our employees with the utmost dignity and respect. We believe in the principles of honesty, fairness and respect for individual freedoms, and are committed to upholding the highest standards of professionalism and integrity in our operations. For these reasons, we have adopted certain policies governing workplace conduct. The Company is committed to strict compliance with these policies and asks all of its employees to agree to abide by these policies as well. A recap of some of these policies (which are more fully described in the Company's Employee Handbook) follows:

• We are an equal opportunity employer. Discrimination based upon an individual's race, color, religion, national origin, gender, age or disability will not be permitted or tolerated.

• Our policy against harassment, including sexual harassment, was designed to provide a comfortable and professional working environment for everyone. It prohibits harassment of any kind in our workplace, especially if it is based upon the factors listed above.

• Our Problem Solving Procedure gives you the right to discuss any work-related problems with management and expect a timely and reasonable response. In the event that you are not satisfied with that response, you have the right to appeal to successively higher levels of management, up to the President of the Company.

• We prohibit retaliation against any employee for exercising his/her rights under company policy or the law. Employees who feel that they are being retaliated against should bring their concern to management's attention immediately for prompt action.

• We are committed to maintaining a safe, healthful and productive working environment for all of our employees. In keeping with that goal, we have adopted a strict policy prohibiting the use, possession or sale of alcohol or illegal drugs while on Company property, on Company business or while operating a Company-owned vehicle. We have also adopted a policy prohibiting weapons in the workplace.

• We have established an Employee Assistance Program, which provides a confidential counseling and referral service designed to help you and your family deal with various personal problems. Also, in the interest of promoting better communication between the Company and its employees, and to facilitate the identification and resolution of workplace problems, we have established a confidential, toll-free telephone number (800-455-1140) to allow employees to express any concerns they have pertaining to workplace issues.

The purpose of the above policies is to assure fair, safe and pleasant working conditions for all of the Company's employees. However, we recognize that disputes may arise from time to time, which must be resolved in a fair and efficient manner. In order to ensure equitable, efficient and cost-effective resolution of these matters, employment-related disputes (other than those specifically excluded below) will be resolved by arbitration, in accordance with the following procedures:

1.   Matters Subject To Arbitration. Employee and the Company agree that, except for the matters identified in Section 2 below and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

2.   <u>Exclusions</u>. It is expressly agreed and understood that this Agreement shall not govern claims for workers' compensation or unemployment benefits, or claims brought to enforce any noncompetition or confidentiality agreement which may exist between the parties.

3.   <u>Notification/Timeliness Of Claims</u>. Any claim which either party has against the other must be presented in writing by the claiming party to the other within one year of the date the claiming party knew or should have known of the facts giving rise to the claim. Otherwise, the claim shall be deemed waived and forever barred even if there is a federal or state statute of limitations which would have given more time to pursue the claim.

4.   <u>Legal Counsel/Costs</u>. Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration; provided however, that the arbitrator may award attorneys' fees to the prevailing party when expressly authorized by statute to do so. All other costs pertaining to the arbitration shall be paid by the Company.

   <u>NOTICE TO EMPLOYEE</u>:   BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN SECTION 2 ABOVE AND THOSE OTHERWISE EXCLUDED BY APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND YOU ARE WAIVING YOUR RIGHT TO A JURY OR COURT TRIAL.

   <u>AFFIRMATION OF AT-WILL EMPLOYMENT STATUS</u>.   THE PARTIES ACKNOWLEDGE AND AGREE THAT, UNLESS THEY ARE PARTIES TO A WRITTEN EMPLOYMENT AGREEMENT WHICH GUARANTEES EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, EMPLOYEE IS AN EMPLOYEE TERMINABLE AT-WILL, AND THAT THE COMPANY MAY ALTER THE TERMS OF, OR TERMINATE, EMPLOYEE'S EMPLOYMENT IN ITS SOLE DISCRETION, FOR ANY REASON OR NO REASON. EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE IS EMPLOYED BY THE COMPANY IDENTIFIED BELOW AND NOT BY SUCH COMPANY'S ULTIMATE PARENT COMPANY, SERVICE CORPORATION INTERNATIONAL, OR ANY OTHER AFFILIATE OF THE COMPANY.

   <u>MODIFICATIONS</u>.   NEITHER EMPLOYEE'S AT-WILL STATUS NOR ANY OF THE ABOVE PROVISIONS PERTAINING TO ARBITRATION MAY BE MODIFIED EXCEPT BY A WRITTEN AGREEMENT SIGNED BY BOTH EMPLOYEE AND THE COMPANY.

   I have read the above, am familiar with its terms and agree that my relationship with my employer shall be governed thereby.

EMPLOYEE:

Signature: _Phil Green_

Print Name: _PHil GReeN_

Date: _3/6/01_

COMPANY:

Signature: _Carol Prescott_

Print Name: _Carol Prescott_

Title: _Manager Human Resources_

Date: _3/6/01_

## EXHIBIT "A"

## ARBITRATION PROCEDURES

1.   Selection of Arbitrator.  An arbitrator shall be selected by mutual agreement of the parties.  If the parties are unable to agree on a single arbitrator, each party shall select one arbitrator, and the two arbitrators so selected shall select a third arbitrator.  The three arbitrators so selected will then hear and decide the matter.

2.   Qualification of Arbitrators.  All arbitrators must be attorneys, judges or retired judges who are licensed to practice law in the state where the Employee is or most recently was employed by the Company.

3.   Location of Arbitration Proceedings.  The arbitration proceedings shall be conducted within the county in which Employee is or most recently was employed by the Company or at another mutually agreeable location.

4.   Procedural Rules.  Except as otherwise provided herein, the arbitration proceedings shall be conducted in accordance with the statutes, rules or regulations governing arbitrations in the state in which Employee is or most recently was employed by Employer.  In the absence of such statutes, rules or regulations, the arbitration proceedings shall be conducted in accordance with the employment arbitration rules of the American Arbitration Association ("AAA"); provided however, that the foregoing reference to the AAA rules shall not be deemed to require any filing with that organization, nor any direct involvement of that organization.  In the event of any inconsistency between this Agreement and the statutes, rules or regulations to be applied pursuant to this paragraph, the terms of this Agreement shall apply.

5.   Award.  The arbitrator(s) shall issue a written award, which shall contain, at a minimum, the names of the parties, a summary of the issues in controversy, and a description of the award issued.  Upon motion to a court of competent jurisdiction, either party may obtain a judgment or decree in conformity with the arbitration award, and said award shall be enforced as any other judgment or decree.

6.   Applicable Law.  In resolving claims governed by this agreement, the arbitrator shall apply the laws of the state in which the Employee is or most recently was employed by the Company, and/or federal law, if applicable.

7.   Confidentiality.  The parties agree and acknowledge that any arbitration proceedings between them, and the outcome of such proceedings, shall be kept strictly confidential; provided however, that the Company may disclose such information to the extent required by law and to its employees, agents and professional advisors who have a legitimate need to know such information, and the Employee may disclose such information (1) to the extent required by law, (2) to the extent that the Employee is required to disclose same to professional persons assisting Employee in preparing tax returns, and (3) to Employee's legal counsel.

STATE OF TEXAS                                   §
                                                §
COUNTY OF HARRIS                                 §

### AFFIDAVIT OF KAREN JOHNSON

1. My name is Karen Johnson. I am over 21 years of age. I have never been convicted of a felony, and I am fully competent to testify to the matters herein. All statements made herein are true and correct, and are based on my personal knowledge as the Human Resources Administrator of SCI Management, Inc.

2. As the Human Resources Administrator for SCI Management, Inc., I am the custodian for certain personnel records for SCI and its subsidiary and affiliated companies. In my role as the Human Resources Administrator, I am also generally familiar with the record keeping practices of SCI and its subsidiary and affiliated companies for such records.

3. Attached hereto as Tab A is a true and correct copy of a Principles of Employment and Arbitration Procedures Agreement for Phil Green dated March 6, 2001. This attached Agreement was kept by SCI in the regular course of its business. It was the regular course of business for an employee or representative of SCI and/or its subsidiary or affiliated companies with knowledge of the act, event, condition, opinion, or other information recorded to make the attached Agreement or to transmit information thereof to be included in such Agreement. The attached Agreement was made at or near the time of Mr. Green's hiring or reasonably soon thereafter.


FURTHER AFFIANT SAYETH NOT.

KAREN JOHNSON

**STATE OF TEXAS**          §
                                    §

**COUNTY OF HARRIS**        §

BEFORE ME, the undersigned Notary, personally appeared Karen Johnson, who after being duly sworn, stated that the above statements in her Affidavit are within her personal knowledge and are true and correct.

SWORN TO AND SUBSCRIBED before me by Karen Johnson on this _10_ day of May, 2006.

_Rebecca S. Misrock_

Notary Public in and for the State of TEXAS

# Principles of Employment
# & Arbitration Procedures





## Principles of Employment

Your employer, identified below (the "Company"), recognizes that its employees are its most valuable assets and are vital to its success. We also recognize the importance of treating our employees with the utmost dignity and respect. We believe in the principles of honesty, fairness and respect for individual freedoms, and are committed to upholding the highest standards of professionalism and integrity in our operations. For these reasons, we have adopted certain policies governing workplace conduct. The Company is committed to strict compliance with these policies and asks all of its employees to agree to abide by these policies as well. A recap of some of these policies (which are more fully described in the Company's Employee Handbook) follows:

- We are an equal opportunity employer. Discrimination based upon an individual's race, color, religion, national origin, gender, age or disability will not be permitted or tolerated.

- Our policy against harassment, including sexual harassment, was designed to provide a comfortable and professional working environment for everyone. It prohibits harassment of any kind in our workplace, especially if it is based upon the factors listed above.

- Our Problem Solving Procedure gives you the right to discuss any work-related problems with management and expect a timely and reasonable response. In the event that you are not satisfied with that response, you have the right to appeal to successively higher levels of management, up to the President of the Company.

- We prohibit retaliation against any employee for exercising his/her rights under company policy or the law. Employees who feel that they are being retaliated against should bring their concern to management's attention immediately for prompt action.

- We are committed to maintaining a safe, healthful and productive working environment for all of our employees. In keeping with that goal, we have adopted a strict policy prohibiting the use, possession or sale of alcohol or illegal drugs while on Company property, on Company business or while operating a Company-owned vehicle. We have also adopted a policy prohibiting weapons in the workplace.

- We have established an Employee Assistance Program, which provides a confidential counseling and referral service designed to help you and your family deal with various personal problems. Also, in the interest of promoting better communication between the Company and its employees, and to facilitate the identification and resolution of workplace problems, we have established a confidential, toll-free telephone number (800-455-1140) to allow employees to express any concerns they have pertaining to workplace issues.

The purpose of the above policies is to assure fair, safe and pleasant working conditions for all of the Company's employees. However, we recognize that disputes may arise from time to time, which must be resolved in a fair and efficient manner. In order to ensure equitable, efficient and cost-effective resolution of these matters, employment-related disputes (other than those specifically excluded below) will be resolved by arbitration, in accordance with the following procedures:

1. **Matters Subject To Arbitration.** Employee and the Company agree that, except for the matters identified in Section 2 below and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

2.   Exclusions. It is expressly agreed and understood that this Agreement shall not govern claims for workers' compensation or unemployment benefits, or claims brought to enforce any noncompetition or confidentiality agreement which may exist between the parties.

3.   Notification/Timeliness Of Claims. Any claim which either party has against the other must be presented in writing by the claiming party to the other within one year of the date the claiming party knew or should have known of the facts giving rise to the claim. Otherwise, the claim shall be deemed waived and forever barred even if there is a federal or state statute of limitations which would have given more time to pursue the claim.

4.   Legal Counsel/Costs. Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration; provided however, that the arbitrator may award attorneys' fees to the prevailing party when expressly authorized by statute to do so. All other costs pertaining to the arbitration shall be paid by the Company.

   NOTICE TO EMPLOYEE:  BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN SECTION 2 ABOVE AND THOSE OTHERWISE EXCLUDED BY APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND YOU ARE WAIVING YOUR RIGHT TO A JURY OR COURT TRIAL.

   AFFIRMATION OF AT-WILL EMPLOYMENT STATUS.  THE PARTIES ACKNOWLEDGE AND AGREE THAT, UNLESS THEY ARE PARTIES TO A WRITTEN EMPLOYMENT AGREEMENT WHICH GUARANTEES EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, EMPLOYEE IS AN EMPLOYEE TERMINABLE AT-WILL, AND THAT THE COMPANY MAY ALTER THE TERMS OF, OR TERMINATE, EMPLOYEE'S EMPLOYMENT IN ITS SOLE DISCRETION, FOR ANY REASON OR NO REASON. EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE IS EMPLOYED BY THE COMPANY IDENTIFIED BELOW AND NOT BY SUCH COMPANY'S ULTIMATE PARENT COMPANY, SERVICE CORPORATION INTERNATIONAL, OR ANY OTHER AFFILIATE OF THE COMPANY.

   MODIFICATIONS.  NEITHER EMPLOYEE'S AT-WILL STATUS NOR ANY OF THE ABOVE PROVISIONS PERTAINING TO ARBITRATION MAY BE MODIFIED EXCEPT BY A WRITTEN AGREEMENT SIGNED BY BOTH EMPLOYEE AND THE COMPANY.

   I have read the above, am familiar with its terms and agree that my relationship with my employer shall be governed thereby.

EMPLOYEE:

Signature: _Phil Green_

Print Name: _PHil GReeN_

Date: _3/6/01_

COMPANY:

Signature: _Carol Prescott_

Print Name: _Carol Prescott_

Title: _Manager, Human Resources_

Date: _3/6/01_

# EXHIBIT "A"

## ARBITRATION PROCEDURES

1.      Selection of Arbitrator.  An arbitrator shall be selected by mutual agreement of the parties.  If the parties are unable to agree on a single arbitrator, each party shall select one arbitrator, and the two arbitrators so selected shall select a third arbitrator.  The three arbitrators so selected will then hear and decide the matter.

2.      Qualification of Arbitrators.  All arbitrators must be attorneys, judges or retired judges who are licensed to practice law in the state where the Employee is or most recently was employed by the Company.

3.      Location of Arbitration Proceedings.  The arbitration proceedings shall be conducted within the county in which Employee is or most recently was employed by the Company or at another mutually agreeable location.

4.      Procedural Rules.  Except as otherwise provided herein, the arbitration proceedings shall be conducted in accordance with the statutes, rules or regulations governing arbitrations in the state in which Employee is or most recently was employed by Employer.  In the absence of such statutes, rules or regulations, the arbitration proceedings shall be conducted in accordance with the employment arbitration rules of the American Arbitration Association ("AAA"); provided however, that the foregoing reference to the AAA rules shall not be deemed to require any filing with that organization, nor any direct involvement of that organization.  In the event of any inconsistency between this Agreement and the statutes, rules or regulations to be applied pursuant to this paragraph, the terms of this Agreement shall apply.

5.      Award.  The arbitrator(s) shall issue a written award, which shall contain, at a minimum, the names of the parties, a summary of the issues in controversy, and a description of the award issued.  Upon motion to a court of competent jurisdiction, either party may obtain a judgment or decree in conformity with the arbitration award, and said award shall be enforced as any other judgment or decree.

6.      Applicable Law.  In resolving claims governed by this agreement, the arbitrator shall apply the laws of the state in which the Employee is or most recently was employed by the Company, and/or federal law, if applicable.

7.      Confidentiality.  The parties agree and acknowledge that any arbitration proceedings between them, and the outcome of such proceedings, shall be kept strictly confidential; provided however, that the Company may disclose such information to the extent required by law and to its employees, agents and professional advisors who have a legitimate need to know such information, and the Employee may disclose such information (1) to the extent required by law, (2) to the extent that the Employee is required to disclose same to professional persons assisting Employee in preparing tax returns, and (3) to Employee's legal counsel.

HR-146 (Rev. 12/99)

UNITED STATES OF AMERICA

DEPARTMENT OF LABOR

OFFICE OF ADMINISTRATIVE LAW JUDGES

| | | |
|---|---|---|
| IN THE MATTER OF | * | |
| PHILIP W. GREEN, | * | |
|      Complainant, | * | |
| | * | |
| VS. | * | CASE NO. 2006-SOX-35 |
| | * | |
| SERVICE CORPORATION | * | |
| INTERNATIONAL, | * | |
|      Respondent. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF PHILIP WAYNE GREEN

VOLUME 1

FEBRUARY 6, 2006

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION of PHILIP WAYNE GREEN, produced as a

witness at the instance of the Respondent, and duly

sworn, was taken in the above-styled and numbered cause

on February 6, 2006, from 10:21 a.m. to 7:57 p.m.,

before Carol Jenkins, CSR in and for the State of Texas,

reported by machine shorthand, at the offices of David

T. Lopez & Associates, 3900 Montrose Boulevard, Houston,

Texas 77006, pursuant to notice.

Job No. 76077





LegaLink Houston          tel (713) 426-0400     Beard-Phillips Reporting     tel (713) 868-2929
1235 North Loop W, Ste 510   tel (888) 513-9800   1235 North Loop W, Ste 510    tel (800) 852-3376
Houston, TX 77008          fax (713) 426-0600     Houston, TX 77008            fax (713) 426-0600

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES · WWW.LEGALINK.COM

Philip Wayne Green  -  2-6-06

Page 73

| | | |
|---|---|---|
| 1 | order to pursue private practice of some sort.  So I | 13:31:50 |
| 2 | guess combined between the two, I have spent a majority, | 13:31:55 |
| 3 | almost an entire workday on either searching for a | 13:32:03 |
| 4 | position or preparing myself to go into private practice | 13:32:06 |
| 5 | or improving my skills for a position. | 13:32:15 |
| 6 | Q.  You say private practice.  You mean as an | 13:32:17 |
| 7 | attorney or a CPA or what? | 13:32:20 |
| 8 | A.  As any or all of the above.  You know, if I can't | 13:32:24 |
| 9 | find a position, I'll try to, you know, do some legal | 13:32:30 |
| 10 | work, try to do some accounting work, try to do some | 13:32:37 |
| 11 | investment management work.  Catching up on 20 years of | 13:32:40 |
| 12 | law takes a lot of time. | 13:32:46 |
| 13 | MR. BUX:  I'd like to have this marked as | 13:32:49 |
| 14 | Deposition Exhibit No. 11, please. | 13:33:01 |
| 15 | (Green Exhibit No. 11 marked.) | 13:33:03 |
| 16 | Q.  (By Mr. Bux)  Would you please look at what I've | 13:33:04 |
| 17 | handed to you as Deposition Exhibit No. 11?  Have you | 13:33:06 |
| 18 | had a chance to look at Deposition Exhibit No. 11? | 13:34:23 |
| 19 | A.  Yes. | 13:34:27 |
| 20 | Q.  On the first page of Deposition Exhibit No. 11, | 13:34:28 |
| 21 | it says Principles of Employment and Arbitration | 13:34:32 |
| 22 | Procedures.  At the bottom of the page is Service | 13:34:36 |
| 23 | Corporation International's logo, correct? | 13:34:41 |
| 24 | A.  Yes. | 13:34:43 |
| 25 | Q.  On the third page of Deposition Exhibit No. 11 is | 13:34:43 |

Philip Wayne Green  -  2-6-06

Page 74

| | | |
|---|---|---|
| 1 | a signature on the left.  Is that your signature? | 13:34:49 |
| 2 | A.  Yes. | 13:34:52 |
| 3 | Q.  Did you receive a copy of this document and sign | 13:34:53 |
| 4 | it on or about March 6th, 2001? | 13:34:56 |
| 5 | A.  According to my signature, I did, but I don't | 13:34:59 |
| 6 | recollect signing this document.  This one looks new to | 13:35:07 |
| 7 | me. | 13:35:12 |
| 8 | Q.  But that is your signature? | 13:35:14 |
| 9 | A.  That's my signature or a damn good forgery | 13:35:18 |
| 10 | thereof. | 13:35:22 |
| 11 | Q.  Now, are you claiming that your signature is a | 13:35:22 |
| 12 | forgery? | 13:35:25 |
| 13 | A.  No. | 13:35:25 |
| 14 | Q.  Do you have any reason to doubt that you received | 13:35:25 |
| 15 | this document on or about March 6th, 2001? | 13:35:27 |
| 16 | A.  As I said a moment ago, this does not look | 13:35:30 |
| 17 | familiar to me, but it could very well be.  I just don't | 13:35:40 |
| 18 | recall. | 13:35:47 |
| 19 | Q.  If you'll look at Deposition Exhibit No. 8, | 13:35:47 |
| 20 | that's your offer letter from SCI.  That document on the | 13:36:03 |
| 21 | first sentence of the first paragraph indicates you were | 13:36:16 |
| 22 | hired as a director of corporate finance in the | 13:36:19 |
| 23 | corporate finance department.  Is that an accurate | 13:36:24 |
| 24 | statement of what your job was when you started with | 13:36:27 |
| 25 | SCI? | 13:36:30 |

Page 291

1  COUNTY OF HARRIS

2  STATE OF TEXAS

3

4                    REPORTER'S CERTIFICATE

5

6      I, CAROL JENKINS, Certified Shorthand Reporter in and

7  for the State of Texas, hereby certify that this

8  transcript is a true record of the testimony given by

9  the witness named herein, after said witness was duly

10 sworn by me.  The witness was requested to review the

11 deposition.

12     I further certify that I am neither attorney nor

13 counsel for, related to, nor employed by any of the

14 parties to the action in which this testimony was taken.

15 Further, I am not a relative or employee of any attorney

16 of record in this cause, nor do I have a financial

17 interest in the action.

18     SUBSCRIBED AND SWORN TO by the undersigned on this

19 the  8th  day of  February , 2006.

20

21                    *Carol Jenkins*

22                    CAROL JENKINS, CSR
                      Certificate No. 2660
23                    Date of Expiration:  12/31/02
                      LegaLink Reporting, No. 210
24                    1235 North Loop West, Suite 510
                      Houston, Texas 77008
25                    (713) 426-0400

Westlaw

--- F.3d ----                                                                              Page 1

--- F.3d ----, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.
ALLIANCE BERNSTEIN INVESTMENT
RESEARCH AND MANAGEMENT, INC.,
Alliance Capital Management, LP, and Alliance
Capital Management Corp., Plaintiffs-Appellants,
v.
Charles SCHAFFRAN, Defendant-Appellee.
Docket No. 05-4437-CV.

Argued: Feb. 2, 2006.
Decided: April 12, 2006.

**Background:** Former employer brought declaratory
judgment action against former employee, seeking a
determination that it was not required to arbitrate
employee's wrongful discharge claim, which
asserted violation of the Sarbanes-Oxley Act. The
United States District Court for the Southern
District of New York, Loretta A. Preska, J.,
dismissed action. Employer appealed.

**Holdings:** The Court of Appeals, Chin, District
Judge, sitting by designation, held that:

4(1) New York law applied to issue of arbitrability,
and

9(2) the issue of arbitrability of employee's claim
was subject to arbitration.

Affirmed.

**[1] Arbitration 33 ⟜23.25**

33 Arbitration
  33IV Performance, Breach, Enforcement, and
Contest
    33k23.17 Judgment or Order and Review

    33k23.25 k. Scope and Standards of
Review. Most Cited Cases
When the district court resolves the question of
arbitrability on motions without making factual
findings, the Court of Appeals reviews its decision
de novo.

**[2] Arbitration 33 ⟜2**

33 Arbitration
  33I Nature and Form of Proceeding
    33k2 k. Constitutional and Statutory
Provisions; Rules of Court. Most Cited Cases

**Commerce 83 ⟜80.5**

83 Commerce
  83II Application to Particular Subjects and
Methods of Regulation
    83II(I) Civil Remedies
      83k80.5 k. Arbitration. Most Cited Cases
The Federal Arbitration Act (FAA) creates a body
of federal substantive law of arbitrability applicable
to arbitration agreements affecting interstate
commerce. 9 U.S.C.A. § 1 et seq.

The Federal Arbitration Act (FAA) creates a body
of federal substantive law of arbitrability applicable
to arbitration agreements affecting interstate
commerce. 9 U.S.C.A. § 1 et seq.

**[3] Federal Courts 170B ⟜412.1**

170B Federal Courts
  170BVI State Laws as Rules of Decision
    170BVI(C) Application to Particular Matters
      170Bk412 Contracts; Sales
        170Bk412.1 k. In General. Most Cited
Cases
Courts generally look to state law for guidance in
interpreting a contract, as they seek to ascertain the
parties' intent.

**[4] Federal Courts 170B ⟜403**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



··· F.3d ----                                                                  Page 2

--- F.3d ---, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

170B Federal Courts
  170BVI State Laws as Rules of Decision
    170BVI(C) Application to Particular Matters
      170Bk403  k. Arbitration. Most Cited
Cases
New York law applied to issue of arbitrability, in
former employer's declaratory judgment action
against former employee, seeking determination
that it was not required to arbitrate wrongful
discharge claim, as employee was employed in New
York, and the employee filed arbitration
proceedings in New York.

**[5] Arbitration 33 ☞1.1**

33 Arbitration
  33I Nature and Form of Proceeding
    33k1.1 k. Contractual or Consensual Basis.
Most Cited Cases
Arbitration is simply a matter of contract between
the parties; it is a way to resolve those disputes, but
only those disputes that the parties have agreed to
submit to arbitration.

**[6] Arbitration 33 ☞23.14**

33 Arbitration
  33IV Performance, Breach, Enforcement, and
Contest
    33k23.12 Questions to Be Determined
      33k23.14 k. Arbitrability of Dispute. Most
Cited Cases
Under the Federal Arbitration Act (FAA), as
interpreted by the Supreme Court, the general
presumption is that the issue of arbitrability should
be resolved by the courts. 9 U.S.C.A. § 1 et seq.

**[7] Arbitration 33 ☞23.14**

33 Arbitration
  33IV Performance, Breach, Enforcement, and
Contest
    33k23.12 Questions to Be Determined
      33k23.14 k. Arbitrability of Dispute. Most
Cited Cases
Under the Federal Arbitration Act (FAA), the issue
of whether the parties agreed to arbitrate a matter is
to be decided by the courts and not the arbitrators,
unless the parties clearly and unmistakably provide

otherwise. 9 U.S.C.A. § 1 et seq.

**[8] Arbitration 33 ☞23.14**

33 Arbitration
  33IV Performance, Breach, Enforcement, and
Contest
    33k23.12 Questions to Be Determined
      33k23.14 k. Arbitrability of Dispute. Most
Cited Cases
In determining whether a dispute is subject to
arbitration, under the Federal Arbitration Act
(FAA), the proper inquiry is whether there is clear
and unmistakable evidence from the arbitration
agreement, as construed by the relevant state law,
that the parties intended that the question of
arbitrability shall be decided by the arbitrators. 9
U.S.C.A. § 1 et seq.

**[9] Arbitration 33 ☞92**

33 Arbitration
  33VII Exchanges and Dealer Associations
    33k92 k. Employees of Exchanges or Dealer
Associations. Most Cited Cases
Under New York law, the issue of arbitrability of
former employee's claim of wrongful discharge,
which asserted violation of the Sarbanes-Oxley Act,
was subject to arbitration, where former employer
was member of the National Association of
Securities Dealers (NASD), registration form that
employee executed contained mandatory arbitration
clause, which incorporated NASD arbitration rules,
and the NASD required arbitration of disputes over
arbitrability that turn on interpretations of the
NASD arbitration rules. 18 U.S.C.A. § 1514A.

Joseph Baumgarten, Proskauer Rose LLP, New
York, New York (Tracey Levy, on the brief), for
Plaintiffs-Appellants.
Lee Bantle, Bantle & Levy LLP, New York, New
York (Robert Levy, on the brief), for
Defendant-Appellee.

Before: POOLER and B.D. PARKER, Circuit
Judges, and CHIN, District Judge.[FN*]
CHIN, District Judge.
*1 For decades, employers and employees have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                          Page 3

--- F.3d ----, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

been litigating the issue of the arbitrability of employment discrimination claims. When the issue first arose, employers sought to require employees to arbitrate and employees resisted, preferring to take their claims to court. In this case, the roles are reversed, as the employer seeks to compel an employee to litigate in court, while the employee prefers to pursue his claims in arbitration.

As a consequence of the parties' dispute over the forum, the employee's claims-which were submitted for arbitration in September 2004-are nowhere near resolution. The parties have already expended much time and effort, little of it on the merits. Indeed, the issue before this Court is not even whether the claims *must* be arbitrated, but rather it is the preliminary issue of *who* will decide the arbitrability question.

The District Court held that the issue of arbitrability is to be decided by an arbitration panel rather than the court. For the reasons that follow, we agree.

### STATEMENT OF THE CASE

#### A. The Facts

The facts are undisputed, except as otherwise stated, and may be summarized as follows:

For approximately ten years ending in November 2003, defendant-appellee Charles Schaffran was employed by plaintiffs-appellants Alliance Bernstein Investment Research and Management, Inc., Alliance Capital Management, LP (the "LP"), and Alliance Capital Management Corp. (collectively, "Alliance") [FN1] in the hedge fund business. On or about November 14, 2003, Schaffran's employment with Alliance terminated. Schaffran contends that he was wrongly discharged while Alliance contends that Schaffran resigned.

Alliance is a member of the National Association of Securities Dealers (the "NASD"). While he was employed at Alliance, Schaffran was a "person associated with a member" within the meaning of the applicable NASD rules and by-laws. When he

began his employment with Alliance, Schaffran executed a Form U-4, "Uniform Application for Securities Industry Registration or Transfer." The Form U-4 contained a mandatory arbitration clause, which provided:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . .. that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended from time to time ....

In September 2004, approximately ten months after his employment ended, Schaffran commenced arbitration proceedings against Alliance by filing a statement of claim with the NASD. Schaffran alleged that Alliance had discharged him because he cooperated with the Securities and Exchange Commission, the New York State Attorney General's Office, and private attorneys representing customers of Alliance in their respective investigations into alleged wrongdoing by Alliance officers. Schaffran alleged that Alliance violated § 806(a) of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, by terminating his employment. Schaffran also asserted claims under New York law.

*2 In November 2004, Alliance requested that Schaffran withdraw his SOX claim and refile it in District Court. Schaffran refused.

#### B. The NASD Code

The NASD has promulgated a Code of Arbitration Procedure (the "Code") applicable to NASD arbitrations. Several rules in the Code are applicable to this case.

Rule IM-10100(a) provides that when members of the NASD and persons associated with members " fail to submit a dispute for arbitration under the [Code] as required by that Code," they engage in " conduct inconsistent with just and equitable principles of trade" and violate the Code.

Rule 10101 provides that the Code "is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy ... arising out of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 4

--- F.3d ----, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

employment or termination of employment of associated person(s) with any member."

Rule 10201(a) sets forth the matters for which arbitration is required. It provides, in pertinent part: ...Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons ... or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of ... a member against a person associated with a member or a person associated with a member against a member.

Paragraph (b) of Rule 10201 provides an exception to mandatory arbitration for employment discrimination claims:
A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

The exception was added by an amendment that became effective on January 1, 1999. *See Desiderio v. NASD,* 191 F.3d 198, 201 (2d Cir.1999).

Rule 10324 governs the interpretation of the provisions of the Code and provides:
The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

### C. *Proceedings Below*

Alliance commenced this action below by filing a complaint on November 12, 2004, seeking a declaratory judgment that it was not required to arbitrate Schaffran's SOX claims before the NASD.

On December 20, 2004, Schaffran moved to dismiss the complaint and to compel arbitration. On January 10, 2005, Alliance opposed the motion and cross-moved for summary judgment.

By order docketed March 14, 2005, the District Court denied Schaffran's motion to dismiss and compel arbitration and granted the declaratory relief sought by Alliance, holding that Alliance was not required to arbitrate the SOX claims.

*3 Schaffran moved for reconsideration and reargument or to alter or amend the judgment. By order dated July 14, 2005, and entered on July 18, 2005, the District Court granted the motion, holding that the issue of arbitrability should be decided by an arbitrator. The District Court withdrew its March 14, 2005, decision and dismissed the complaint. Although it did not explicitly say that it was doing so, the District Court effectively granted Schaffran's initial motion to dismiss. Alliance filed a timely notice of appeal on August 15, 2005. By order filed August 24, 2005, the District Court stayed the arbitration proceedings pending appeal.

### DISCUSSION

The crux of the dispute over arbitrability is whether a SOX claim is an "employment discrimination" claim within the meaning of Rule 10201(b) of the Code. If it is, then the claim is excepted from the mandatory arbitration provisions of the Code and Alliance can decline to arbitrate. If it is not, then the claim does not fit within the exception and Alliance has no choice but to arbitrate. The threshold question, however, and the only issue before this Court, is who decides arbitrability, *i.e.,* whether a court or an arbitration panel decides whether a SOX claim falls within the exception set forth in Rule 10201(b).

### A. *Applicable Law*

### 1. *Standard of Review*

[1] Because the District Court resolved the question

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---                                                                    Page 5

--- F.3d ---, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

of arbitrability on motions without making factual findings, we review its decision de novo. See Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir.2005) (district court's decision on arbitrability is reviewed de novo ); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir.2004) (same); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (district court's decision to confirm arbitration award on ground parties agreed to submit dispute to arbitration is reviewed for clear error as to factual findings and de novo as to conclusions of law); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir.2003) (if issues of fact exist as to making of arbitration agreement, trial is necessary).

### 2. Choice of Law

[2][3][4] Both federal and state law apply. First, the Federal Arbitration Act (the "FAA") creates a " body of federal substantive law of arbitrability" applicable to arbitration agreements, such as the one at issue here, affecting interstate commerce. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir.1996). Second, New York contracts law applies, as courts generally look to state law for guidance as they seek to ascertain the parties' intent. See First Options, 514 U.S. at 944, 115 S.Ct. 1920; Duke v. Graham Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir.2001) (applying New York contracts principles in deciding arbitrability). Here, it is appropriate to look to New York law as Schaffran was employed in New York and filed the arbitration proceedings with the NASD in New York.

### 3. Arbitrability

*4 [5] As the courts have repeatedly made clear, " arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943, 115 S.Ct. 1920; accord Bybyk, 81 F.3d at 1198.

This concept applies to the issue of arbitrability as well, and thus the inquiry is whether the parties agreed to submit the question of arbitrability itself to arbitration. First Options, 514 U.S. at 944, 115 S.Ct. 1920.

[6][7][8] Under the FAA, as interpreted by the Supreme Court, the general presumption is that the issue of arbitrability should be resolved by the courts. See id. at 944-45, 115 S.Ct. 1920; AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); see also Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir.2005). Consequently, the issue of whether the parties agreed to arbitrate a matter is to be decided by the courts and not the arbitrators, "[u]nless the parties clearly and unmistakably provide otherwise." AT & T Techs., 475 U.S. at 649, 106 S.Ct. 1415. The proper inquiry is whether "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s]." Contec, 398 F.3d at 208 (quotation omitted).

Schaffran relies heavily on Bybyk. The reliance is understandable, for in Bybyk, a case involving an NASD arbitration, this Court held that words in an agreement between the parties to the effect that " any and all controversies ... shall be determined by arbitration" were "elastic enough" to encompass a dispute over arbitrability of a claim. 81 F.3d at 1199 (emphasis and brackets omitted). The Court held that the agreement did not expressly incorporate the Code, but noted in dicta that "[t]he language of the Code itself commits all issues, including issues of arbitrability ..., to the arbitrators." Id. at 1202.

Bybyk, however, was limited by this Court's decision in John Hancock. There, we held that the dicta in Bybyk and decisions in other cases merely stood for the proposition that parties may overcome the presumption that the courts rather than arbitrators should decide arbitrability by showing the existence of a "separate agreement" between the parties that (1) employs language that "any and all controversies" shall be determined by arbitration and (2) expressly incorporates the provisions of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                            Page 6

--- F.3d ----, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

Code that mandate arbitration. *John Hancock,* 254 F.3d at 54-55. We went on to hold that *one party's membership in the NASD, in the absence of a separate agreement between the parties, did not evince a clear and unmistakable intent to arbitrate* the question of arbitrability. *Id.* at 55; *see Bensadoun,* 316 F.3d at 175 ("In *John Hancock,* we ruled that the NASD Code does not evidence a ' clear and unmistakable' intent to submit the issue of arbitrability to arbitrators where only one party is a NASD member and the parties do not have a separate agreement to arbitrate.").

*5 In *Contec,* this Court provided further guidance. There, the parties' arbitration agreement incorporated the commercial arbitration rules of the American Arbitration Association (the "AAA"). 398 F.3d at 207-08. The AAA rules provided that " [t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 208 (quoting AAA Rule R-7(a)). We held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.*

### B. *Application*

[9] This case does not fall squarely within the cases discussed above. Although there is a Form U-4 signed by Schaffran, there is no separate agreement between the parties requiring arbitration. On the other hand, both parties are bound by the Code and other NASD rules and by-laws, as Alliance is a member of the NASD and Schaffran signed the Form U-4 and was a "person associated with a member" of the NASD. *See Thomas James Assocs., Inc. v. Jameson,* 102 F.3d 60, 62, 65 n. 2 (2d Cir.1996). Moreover, as we discuss further below, unlike the AAA rules in *Contec,* the Code does not clearly and unmistakably provide for all issues of arbitrability to be arbitrated. Nonetheless, we affirm, for we hold that the Code unequivocally provides for the arbitrability dispute at issue in this case to be decided in arbitration rather than by the

courts.

Schaffran suggests that all issues of arbitrability between an NASD member and an associated member must be decided in arbitration. We reject the suggestion as overly broad. First, the Form U-4 does not go that far, as it merely requires arbitration of "any dispute, claim or controversy ... *that is required to be arbitrated* " under the Code. (Emphasis added). This language does not answer the question, for it requires arbitration only of disputes that the Code requires to be arbitrated. It is not as broad as the language in *Bybyk,* where the agreement provided that "any and all controversies ... . shall be determined by arbitration." 81 F.3d at 1199.

Second, the Code itself likewise does not require arbitration of "any and all controversies." *But see id.,* 81 at 1202 (suggesting to the contrary). For example, an exception is made for "employment discrimination" claims, the very exception at issue in this case. Code Rule 10201(b). Likewise, members of the NASD are required by the Code to arbitrate only those disputes "eligible for submission " to the NASD.Code Rule 10201(a). Claims that are not "eligible" need not be submitted, and members violate the Code by failing to submit a claim to arbitration only when the Code requires the claim to be submitted. Code Rule IM-10100.

The Code does provide, however, that disputes over the interpretation of its provisions must be arbitrated. Rule 10324 provides that: "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code .... Such interpretations ... shall be final and binding upon the parties." This language clearly and unmistakably evinces an intent to submit any disputes over the interpretation of the Code rules to arbitration. Hence, the parties agreed, unequivocally, to submit disputes of this type to arbitration. *See Von Buren v. Von Buren,* 252 A.D.2d 950, 675 N.Y.S.2d 739, 739-40 (4th Dep't 1998) ("[W]hen the language is clear and unambiguous, the court is required to ascertain the intent of the parties from within the four corners of the instrument, and not from extrinsic evidence.") (internal quotation marks and alterations omitted).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

Page 7

--- F.3d ----, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519
(Cite as: --- F.3d ----)

*6 The crux of the dispute as to arbitrability here concerns the interpretation and applicability of a provision of the Code, namely, Rule 10201(b). The question is whether the words "[a] claim alleging employment discrimination ... in violation of a statute" in Rule 10201(b) encompass a whistleblower claim under § 806 of SOX.

Under Rule 10324, the parties agreed that the arbitrators would be "empowered" to interpret Rule 10201(b) and they agreed further that any such determination would be "final and binding." Accordingly, the general presumption that arbitrability is a matter for the courts rather than arbitrators is overcome in this case, as the Code-which was expressly incorporated into the parties' agreement to arbitrate-clearly and unmistakably evinces the parties' intent to submit to arbitration disputes over arbitrability that turn on interpretations of provisions of the Code.

### CONCLUSION

The District Court's order dismissing the complaint is affirmed.

FN* Denny Chin, United States District Judge for the Southern District of New York, sitting by designation.

FN1. Schaffran technically was employed by the LP. For purposes of the appeal, we treat the three companies as one entity, as do the parties.
C.A.2 (N.Y.),2006.
Alliance Bernstein Inv. Research and Management, Inc. v. Schaffran
--- F.3d ----, 2006 WL 945341 (C.A.2 (N.Y.)), 24 IER Cases 519

Briefs and Other Related Documents (Back to top)

• 05-4437 (Docket) (Aug. 16, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILIP W. GREEN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:06-CV-00833 |
| | § | |
| SERVICE CORPORATION | § | |
| INTERNATIONAL | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT SERVICE CORPORATION INTERNATIONAL'S REPLY IN SUPPORT OF
ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

WILLIAM JOHN BUX
Attorney-In-Charge for Defendant
Service Corporation International
State Bar No. 03546400
S.D. Tex. ID. No. 7396
600 Travis St., Suite 3400
Houston, Texas 77002-3095
(713) 226-1275
(713) 223-3717 (Fax)

OF COUNSEL FOR DEFENDANT
SERVICE CORPORATION INTERNATIONAL:

LOCKE LIDDELL & SAPP LLP
MIRANDA R. TOLAR
State Bar No. 24029843
S. D. Tex. ID No. 28896
600 Travis St., Suite 3400
Houston, Texas 77002-3095
(713) 226-1618
(713) 223-3717 (Fax)

# TABLE OF CONTENTS

A.  Introduction and Summary of Argument ................................................................. 1

B.  SCI's Actions In Defending Itself In The Administrative Proceeding Before The
U.S. Department Of Labor Do Not Constitute A Waiver Of The Arbitration
Agreement In This De Novo Federal Court Lawsuit As A Matter Of Law ........................ 2

  1.  SCI Did Not Substantially Invoke The Judicial Process By Defending
  Itself In The Administrative Proceedings Before the U.S. Department Of
  Labor .......................................................................................................... 3

  2.  Plaintiff Has Failed To Make Any Showing Of Prejudice ..................................... 7

C.  The Arbitration Agreement Applies To Plaintiff's Claim Against SCI ............................ 8

D.  Conclusion ............................................................................................................. 9

## INDEX OF AUTHORITIES

United States Supreme Court

*Mastrobuono v. Shearson Lehman Hutton,*
    514 U.S. 52 (1995) ................................................................. 9

*Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.,*
    460 U.S. 1 (1983) ................................................................. 2

United States Courts of Appeals

*Brennen v. King,*
    139 F.3d 258 (1st Cir. 1998) ................................................ 4

*Dexter v. Prudential Ins. Co. of America,*
    215 F.3d 1136 (10th Cir. 2000)......................................... 4, 5

*Gulf Guar. Life Ins. v. Conn. Gen. Life Ins.,*
    304 F.3d 476 (5th Cir. 2002)................................................ 3

*Keytrade USA, Inc. v. AIN Temouchent M/V,*
    404 F.3d 891 (5th Cir. 2005)................................................ 2

*Republic Ins. Co. v. Paico Receivables, LLC,*
    383 F.3d 341 (5th Cir. 2004)................................................ 7

*Safer v. Nelson Fin. Group, Inc.,*
    422 F.3d 289 (5th Cir. 2005)............................................. 2, 9

*Subway Equip. Leasing Corp. v. Forte,*
    169 F.3d 324 (5th Cir. 1999)..................................... 1, 2, 3, 4, 6, 7

*Tenneco Resins, Inc. v. Davy Intern., AG,*
    770 F.2d 416 (5th Cir. 1985)............................................. 3, 6

*Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co.,*
    243 F.3d 906 (5th Cir. 2001)................................................ 8

*Walker v. J.C. Bradford & Co.,*
    938 F.2d 575 (5th Cir. 1991)......................................... 2, 3, 6, 8

*Williams v. CIGNA Fin. Advisors, Inc.,*
    56 F.3d 656 (5th Cir. 1995)................................................ 6

<u>United States District Courts</u>

*Clayton v. Clear Channel Metroplex, Inc.*
    2001 WL 1163883 (W.D. Wis. 2001)..................................................................4, 5

*Cycle Sport, LLC v. Dinli L.P.,*
    2004 WL 936850 (E.D. La. 2004) ..............................................................................5

**A.    Introduction and Summary of Argument**

As discussed in detail in SCI's Motion to Compel Arbitration, Plaintiff's Sarbanes-Oxley Act whistleblower claim against SCI cannot be pursued in this Court because Plaintiff contractually agreed in his Arbitration Agreement with SCI to submit "all disputes relating to any aspect of Employee's employment with the Company" including "any claims against the Company [or] its affiliates" to binding arbitration. Importantly, Plaintiff does not dispute in his Response that he was provided the Arbitration Agreement or that he signed the Arbitration Agreement. Plaintiff also does not deny that Sarbanes-Oxley Act claims are subject to arbitration or that the terms of the Arbitration Agreement cover Sarbanes-Oxley claims.

Instead, Plaintiff asserts, citing no authority on point, that SCI somehow waived the Arbitration Agreement's binding effect in this *de novo* federal court lawsuit merely by defending itself *in the administrative proceeding that Plaintiff initiated* against SCI before the U.S. Department of Labor ("USDOL"). Importantly, United States Supreme Court, Fifth Circuit, and other case law establish that SCI's minimal defensive actions in the administrative proceeding do not constitute waiver of the Arbitration Agreement in this *de novo* federal court lawsuit as a matter of law.

Plaintiff cannot overcome the "strong presumption" and "heavy burden of proof" against waiver required by the Fifth Circuit. *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 326 (5th Cir. 1999). This is particularly true inasmuch as SCI advised Plaintiff in writing before Plaintiff ever filed his administrative action of Plaintiff's obligation to arbitrate as provided in the Arbitration Agreement. Upon commencement of this lawsuit, SCI immediately included a demand for arbitration in its Original Answer and filed its Motion to Compel Arbitration. Furthermore, Plaintiff can hardly demonstrate prejudice as required by the Fifth Circuit inasmuch as he was on notice from the very inception of the administrative proceedings of his duty to arbitrate any

1

employment dispute he may have.  The applicable case law and the facts establish that no waiver occurred, and Plaintiff's claim against SCI is required to be resolved through binding arbitration.

Surprisingly, Plaintiff also claims that he is not required to arbitrate his Sarbanes-Oxley Act claim because the Arbitration Agreement does not state whether "the Company" refers to SCI or one of its subsidiaries.  Putting aside the fact that the "SCI" logo appears on the first page of the Arbitration Agreement, the Arbitration Agreement itself clearly states that it applies to "all disputes relating to any aspect of Employee's employment with the Company" including "any claims against the Company, *its affiliates* or their respective officers, directors, employees, or agents...."  Even assuming for the sake of argument that Plaintiff had some confusion as to whether "the Company" referred to SCI or one of its subsidiaries, SCI and its subsidiaries are clearly "affiliates" of each other.  Because the Arbitration Agreement is "susceptible of an interpretation which would cover the dispute at issue," the Arbitration Agreement must be enforced.  *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005)

**B.     SCI's Actions In Defending Itself In The Administrative Proceeding Before The U.S. Department Of Labor Do Not Constitute A Waiver Of The Arbitration Agreement In This De Novo Federal Court Lawsuit As A Matter Of Law.**

The United States Supreme Court has recognized that "any doubts concerning the scope of arbitrable issues should be *resolved in favor of arbitration*" including any "*allegation of waiver, delay, or a like defense to arbitrability*."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added).  Accordingly, the Fifth Circuit has a well-settled rule that "waiver of arbitration is not a favored finding," and there is "a strong presumption" against it.  *Keytrade USA, Inc. v. AIN Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005); *Subway*, 169 F.3d at 326 ("There is a strong presumption against waiver of arbitration.").[1]

---

[1] The Fifth Circuit reviews the factual foundation underlying the question of waiver under the clearly erroneous standard and it reviews the waiver finding itself *de novo*.  *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-77 (5th Cir. 1991).

2

Importantly, the party seeking to prove that a waiver occurred, or Plaintiff here, bears a heavy burden of proof. *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir. 1985); *see also Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir. 1991) ("A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate."). This is particularly true where, as here, the party seeking arbitration (SCI) made a timely demand for arbitration at the commencement of the judicial proceedings in the trial court. *Tenneco,* 770 F.2d at 420.

The Fifth Circuit has held that waiver of an arbitration agreement will only be found "when the party seeking arbitration substantially invokes the *judicial process* to the detriment or prejudice of the other party." *Subway,* 169 F.3d at 326 (emphasis added). Thus, in order to prove that a waiver occurred, Plaintiff must establish: (1) SCI substantially invoked the judicial process; and (2) prejudice to Plaintiff as a result. *Id.* To invoke the judicial process, "the party must, at the very least, engage in some overt act *in court* that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* (emphasis added); *see also Gulf Guar. Life Ins. v. Conn. Gen. Life Ins.,* 304 F.3d 476, 484 (5th Cir. 2002). Importantly, the Fifth Circuit has recognized that "even where a party takes substantial steps toward litigation of the arbitral dispute, or participates substantially in litigation procedures, it ordinarily will not waive the right to arbitrate." *Gulf Guar. Life Ins.,* 304 F.3d at 484.

1.     SCI Did Not Substantially Invoke The Judicial Process By Defending Itself In The Administrative Proceedings Before the U.S. Department Of Labor.

Although Plaintiff claims that SCI somehow invoked the judicial process by defending itself against Plaintiff's claims in the administrative proceedings before the USDOL, Plaintiff cites absolutely no case law from any court in this county supporting that proposition. Rather, Plaintiff summarily claims that "there is no authority" that would distinguish court proceedings from administrative proceedings before the USDOL.

As discussed above, under Fifth Circuit precedent, only a movant's invocation of the "judicial process" by an overt act "in court" may be sufficient to constitute a waiver of arbitration. *Subway,* 169 F.3d at 326. Until Plaintiff filed his lawsuit in this Court, there was no judicial process in court. Thus, there can be no waiver based solely on the USDOL administrative proceedings. Further, Plaintiff's case before this Court requires this Court to review the matter *de novo,* regardless of any administrative proceeding before the USDOL.

Contrary to Plaintiff's assertion of no authority on this issue, several circuit courts and other district courts have addressed whether defensive actions occurring in administrative proceedings can constitute a waiver of arbitration and have held that they do not. For example, the First Circuit has explained that "it is to judicial, rather than administrative, proceedings that we look to determine whether such waiver [of arbitration] has occurred." *Brennen v. King,* 139 F.3d 258, 264 (1st Cir. 1998) (holding no waiver where the defendants failed to raise arbitration issue in administrative proceedings before EEOC and state equivalent). Similarly, the Tenth Circuit has stated: "Clearly it was not contemplated that participation in administrative proceedings would operate to waive a contractual right to arbitration." *Dexter v. Prudential Ins. Co. of America,* 215 F.3d 1136, 2000 WL 728821 *3 (10th Cir. 2000) (unpub.) (Tab 1).

In *Clayton v. Clear Channel Metroplex, Inc.,* the Western District of Wisconsin addressed a situation quite similar to that here and found no waiver of an arbitration agreement by the defendant. *See* 2001 WL 1163883 (W.D. Wis. 2001) (Tab 2). In that case, the plaintiff filed a discrimination claim against the defendant with Wisconsin's Equal Rights Division under the Wisconsin Fair Employment Act. *Id.* at *2. After the Equal Rights Division issued a "no cause" determination, the plaintiff filed an appeal and obtained a hearing before an administrative law judge ("ALJ"). *Id.* Before a decision had been issued by the ALJ, the plaintiff withdrew his appeal and filed a complaint in federal district court. *Id.* Upon the filing of the complaint in federal court,

4

the defendant filed a motion to compel arbitration. *Id.* at *3. The court rejected the plaintiff's

waiver argument and compelled arbitration, reasoning as follows:

> The presumption of arbitrability applicable in cases involving the Federal Arbitration
> Act dictates that as a matter of law, any doubts concerning the scope of arbitrable
> issues should be resolved in favor of arbitration...Defendant asserted its right to
> arbitration in direct response to the initiation of litigation in this court, rather than
> litigating first. Plaintiff has cited no support for its contention that the failure to
> request arbitration during proceedings before the Equal Rights Division waives the
> right to arbitration. I see no apparent reason why it should.

*Id.* at *3-4; *see also Cycle Sport, LLC v. Dinli L.P.*, 2004 WL 936850 *3 (E.D. La. 2004) (Tab 3)

("While the defendant has participated in the state administrative hearing, this act alone cannot

serve as a waiver of its right to arbitrate the dispute, nor can the defendant's participation in this

current litigation which has been minimal. The plaintiff has invoked all of this litigation and the

Court does not find that [the plaintiff] has been prejudiced in any way by [the defendant's]

conduct.").

The case before this Court is even stronger than *Clayton* and *Cycle Sport*. In this case, SCI

advised Plaintiff in writing on July 18, 2005, before the administrative proceeding was even

initiated by Plaintiff, that SCI considered Plaintiff to be bound by the mandatory and binding

arbitration provision. *July 18, 2005 Letter, Plaintiff's Exhibit 4*. However, Plaintiff refused to

engage in mandatory and binding arbitration of his employment dispute with SCI. *July 27, 2005*

*Letter, Plaintiff's Exhibit 5*. On August 1, 2005, SCI again reiterated that it intended to enforce its

Arbitration Agreement. *August 1, 2005 Letter, Plaintiff's Exhibit 6*. Furthermore, after Plaintiff

filed this lawsuit in federal court, SCI immediately filed its Answer asserting its right to arbitration

and a Motion to Compel Arbitration. Thus, SCI's defensive actions in the USDOL proceedings can

hardly be construed as a waiver of its right to arbitration.

However, even assuming for the sake of argument that SCI's actions in the administrative

proceedings could be considered to determine if a waiver occurred, the Fifth Circuit has allowed far

more interaction in the federal district court itself without finding that a party waived its contractual right to arbitrate. For example, in *Walker v. J.C. Bradford & Company*, the plaintiffs sued in state court alleging state securities law violations. *See* 938 F.2d at 577. Instead of immediately demanding arbitration, the defendant removed the case to federal court, answered the complaint, served the plaintiffs with interrogatories, requested production of documents, and attended a pretrial conference. *Id.* Thirteen months later, after the plaintiffs moved to transfer the case to Tennessee, the defendant for the first time sought to enforce its contractual right to arbitration. *Id.*

Despite the defendant's delay and participation in the lawsuit while it was in federal court, the Fifth Circuit nevertheless held that the district court's finding that the defendant had waived its right to arbitrate was clearly erroneous. *Id.* at 578. The Fifth Circuit explained that "although [defendant] may act late, it acts in time, for its actions in federal court were not so substantial as to mandate that we overcome the legal presumption that parties who contracted for arbitration should be allowed to arbitrate." *Id; see also Subway,* 169 F.3d at 326 ("*Walker* provides an example of this court's hesitation to find that a party has waived its contractual right to arbitration.").

The Fifth Circuit, in other cases, has made similar decisions. *See e.g., Tenneco Resins,* 770 F.2d at 420-21 (no waiver where the movant filed an answer to the complaint, served interrogatories and requests for production, moved for a protective order, agreed to a joint motion for continuance of the discovery period, and waited 8 months before seeking to compel arbitration); *Williams v. CIGNA Fin. Advisors, Inc.,* 56 F.3d 656, 658 (5th Cir. 1995) (finding no waiver and compelling arbitration where the movant removed action to federal court, answered complaint, asserted a counterclaim, and exchanged Rule 26 discovery before asserting arbitration right).

Obviously, the defensive actions in *Walker, Tenneco,* and *Williams,* which occurred in the context of the federal district court lawsuit itself, were far more overt than the limited defensive actions of SCI in the administrative proceeding, but the Fifth Circuit still concluded that they were

not sufficient to constitute a waiver. SCI's limited defensive actions in the administrative proceeding likewise could not constitute a waiver of SCI's right to arbitration.

Moreover, the case cited by Plaintiff in his response, *Republic Insurance Company v. Paico Receivables, LLC,* 383 F.3d 341 (5th Cir. 2004), is clearly distinguishable from the case here. Unlike this case, *Republic* did not involve administrative proceedings in any way. *Id.* at 343. Rather, *Republic* involved only a party's invocation of the judicial process within the federal district court proceedings. *Id.* Second and perhaps most importantly, in *Republic,* the party who moved to compel arbitration was the very same party who filed the lawsuit in federal district court, thereby clearly invoking the judicial process. *Id.* Here, SCI is merely defending itself against Plaintiff's claim. Third, in *Republic,* the party seeking arbitration did not raise the arbitration issue in its initial pleadings with the district court, but instead waited until days before the federal court trial before raising arbitration for the first time. *Id.* at 345. In contrast, here, SCI promptly filed its Answer with this Court including a demand for arbitration and immediately asserted its right to compel arbitration. The decision in *Republic* is not applicable here.

For these reasons, SCI has not substantially invoked the judicial process such that no waiver has occurred. Plaintiff has wholly failed to carry his heavy burden to overcome the strong presumption against a finding of waiver. Therefore, arbitration of this dispute is required.

2.    Plaintiff Has Failed To Make Any Showing Of Prejudice.

As discussed above, in order to establish that a waiver occurred, the plaintiff must also demonstrate that he suffered prejudice as a result of the defendant's substantial invocation of the judicial process. *Subway,* 169 F.3d at 326. SCI gave Plaintiff written notice before Plaintiff even initiated the administrative proceeding that SCI intended to enforce its right to arbitration. Further, SCI included a demand for arbitration in its initial pleadings with this Court. Thus, Plaintiff can hardly demonstrate that he has been prejudiced in any way. In fact, in his Response, Plaintiff has

failed to make any showing of prejudice and instead only makes generalized protestations about delay and the fact that some limited discovery occurred in the administrative proceeding. However, pursuant to Fifth Circuit precedent, this is simply insufficient to demonstrate prejudice.

The Fifth Circuit holds that a plaintiff's "failure to bring forth more than generalized protestations about the costs of delay are insufficient to overcome the strong federal presumption in favor of arbitration." *Walker,* 938 F.2d at 578. Additionally, delay by itself "falls far short" of establishing a waiver. *Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co.,* 243 F.3d 906, 912 (5th Cir. 2001). Further, when a limited amount of discovery has been conducted "which may also be useful for purposes of arbitration, the court should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay litigation." *Walker,* 938 F.2d at 578. Thus, the Fifth Circuit has found lack of prejudice where the discovery propounded by the party seeking arbitration "will still be relevant when the suit proceeds in arbitration." *Id..*

Here, Plaintiff knew from the beginning that SCI intended to enforce its right to arbitration. Additionally, it was Plaintiff who chose to dismiss his administrative proceeding before the USDOL and proceed in this Court, not SCI. Additionally, the parties only served very limited discovery in the USDOL administrative proceeding and that discovery will still be useful for purposes of arbitration. Because Plaintiff has failed to make a sufficient showing of prejudice, Plaintiff has failed to overcome the strong presumption against a finding of waiver and arbitration is required.

C.     The Arbitration Agreement Applies To Plaintiff's Claim Against SCI.

Plaintiff also asserts in his Response that he is not required to arbitrate his Sarbanes-Oxley Act claim against SCI merely because the Agreement states that it is between Plaintiff and "Your employer, identified below (the Company)," but the Agreement does not specifically state the name of "the Company." Thus, Plaintiff claims he is confused as to whether "the Company" refers to SCI or one of its subsidiaries who issued Plaintiff's termination letter. This is a distinction without a

8

difference.

As discussed in more detail on pages 3 and 4 of SCI's Motion to Compel, the Supreme Court has held that "due regard must be given to federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62 (1995). Thus, arbitration should not be denied "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Safer,* 422 F.3d at 294.

In this case, Plaintiff cannot seriously maintain that he did not know that the Arbitration Agreement applied to SCI inasmuch the SCI logo appears on the very first page. Indeed, Plaintiff claims throughout his Original Complaint that he was employed by and terminated by SCI. *See e.g. Original Complaint,* ¶3.7, 4.1, 4.4. However, even if Plaintiff is confused about whether the term "the Company" refers to SCI or one of its subsidiaries, the Arbitration Agreement itself expressly states that it applies to "all disputes relating to any aspect of Employee's employment" including "any claims against the Company, *its affiliates*, or their respective officers, directors, employees, or agents..." *Arbitration Agreement, p. 2, Defendant's Exhibit A.* Obviously, as a parent company, SCI is considered *an affiliate* of its subsidiaries.

Because the Arbitration Agreement is susceptible to an interpretation that would cover the dispute at issue, Plaintiff is required to pursue his claims, if at all, in arbitration.

**D.   Conclusion**

For the reasons set forth above, SCI respectfully requests that the Court enter an Order (i) compelling arbitration by Plaintiff of Plaintiff's claims, and (ii) staying this action in its entirety during the pendency of any arbitration. In addition, SCI requests that all proceedings in this case be stayed pending the resolution of this Motion given that further litigation would be inconsistent with and contrary to SCI's arbitration rights.

9

Respectfully submitted,


By: _____/s/_____

WILLIAM JOHN BUX
Attorney-In-Charge for Defendant
Service Corporation International
State Bar No. 03546400
S.D. Tex. ID. No. 7396
600 Travis St., Suite 3400
Houston, Texas 77002-3095
(713) 226-1275
(713) 223-3717 (Fax)


OF COUNSEL FOR DEFENDANT
SERVICE CORPORATION INTERNATIONAL:

LOCKE LIDDELL & SAPP LLP
MIRANDA R. TOLAR
State Bar No. 24029843
S. D. Tex. ID No. 28896
600 Travis St., Suite 3400
Houston, Texas 77002-3095
(713) 226-1618
(713) 223-3717 (Fax)


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel via certified mail, return receipt requested on this the 8th day of June, 2006:

David T. Lopez
David T. Lopez & Associates
3900 Montrose Blvd.
Houston, Texas 77006


_____/s/_____
Miranda R. Tolar


10

**TAB 1**

Westlaw.

215 F.3d 1336                                                                                                      Page 1

215 F.3d 1336, 2000 WL 728821 (C.A.10 (Kan.)), 2000 CJ C.A.R. 3299
(Cite as: 215 F.3d 1336)

**H**
Briefs and Other Related Documents
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a "
Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA10
Rule 36.3 for rules regarding the citation of
unpublished opinions.)
    United States Court of Appeals, Tenth Circuit.
        Cynthia D. DEXTER, Plaintiff-Appellant,
                            v.
The PRUDENTIAL INSURANCE COMPANY OF
AMERICA; Bill S. Pinkerton; John Devaney; Jack
Palmer; Fred Dimmel, II; Jim Novack; Steve Zadeh,
                Defendants-Appellees.
                     No. 99-3137.

                    June 7, 2000.

Before BRORBY and McWILLIAMS, Circuit
Judges, and ELLISON, Senior District Judge.FN**

      FN** The Honorable James O. Ellison,
      Senior United States District Judge,
      Northern District of Oklahoma, sitting by
      designation.


             ORDER AND JUDGMENT FN*

      FN* This order and judgment is not
      binding precedent, except under the
      doctrines of law of the case, res judicata,
      and collateral estoppel. The court
      generally disfavors the citation of orders
      and judgments; nevertheless, an order and
      judgment may be cited under the terms and
      conditions of 10th Cir.R. 36.3.ELLISON.
*1 Plaintiff-Appellant, Cynthia Dexter, was
employed as a sales representative for
Defendant-Appellee, Prudential. Prior to her
employment she signed a U-4 form as part of the

requirements for registration as a representative
affiliated with the National Association of
Securities Dealers ("NASD"). The form contained a
clause by which she agreed to arbitrate claims or
controversies "required to be arbitrated under the
rules, constitution or by-laws of the organizations
with which I register ...". The NASD Code of
Arbitration Procedure requires arbitration of any
employment disputes.

On April 19, 1996 Plaintiff filed her complaint
charging Prudential and certain individual
Defendants with sexual harassment, maintenance of
a hostile work environment, gender discrimination,
and retaliation. On July 17, 1996, Defendants filed
their first responsive pleading, a Motion to Compel
Arbitration and to Stay Proceedings Pending
Arbitration, citing the U-4 form signed by Dexter at
the time of her employment. Plaintiff's response
urged that the U-4 form was boiler-plate, that the
effect of the agreement was not explained to her and
that she was not provided with a copy of the NASD
rules, which specified that employment matters
were subject to arbitration.

On October 7, 1996, the District Court entered an
order sustaining Defendants' Motion to Compel
Arbitration and to Stay Proceedings Pending
Arbitration "for the reasons stated in Defendants'
memoranda." Defendants' memoranda in support of
a stay and compelling arbitration relied in part on
*Armijo v. Prudential Insurance Company*, 72 F.3d
793 (10th Cir.1995). *Armijo* involved the same
corporate defendant and the same U-4 application
form having the same mandatory arbitration
language as in the instant case. The *Armijo* court
decided, in pertinent part, that "[q]uestions of
arbitrability must be addressed with a healthy
regard for the federal policy favoring arbitration",
that the plaintiffs had "failed to rebut the
presumption of arbitrability," and that arbitration
clauses must be interpreted liberally, and any
doubts should be resolved in favor of arbitration."
*Id.* at 797-98.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

215 F.3d 1336                                                                                 Page 2

215 F.3d 1336, 2000 WL 728821 (C.A.10 (Kan.)), 2000 CJ C.A.R. 3299
**(Cite as: 215 F.3d 1336)**

Defendants also relied, in their memoranda, on the holding of this court in *Metz v. Merrill Lynch, Pierce, Fenner and Smith*, 39 F.3d 1482 (10th Cir.1994), wherein the Court stated, "our reading of *Gilmer* ... supports the conclusion that Title VII claims are subject to compulsory arbitration." *Id.*, at 1487 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26(1991)). Lastly, Defendants relied upon well-settled rules of contract law that a party to an agreement is charged with knowledge of the terms of the agreement in responding to Plaintiff's argument that she was unaware that the U 4 form contained mandatory arbitration language. *See e.g.*, 17 Am.Jur.2d Contracts § 224(1991). Thus, the District Court compelled arbitration and stayed proceedings pending arbitration based on *Armijo*, *Metz*, and fundamental principles of contract law.

*2 In October of 1997 Plaintiffs' counsel withdrew from the case and new counsel filed a Motion to Reconsider the Court's Order of Stay and Compelling Arbitration. The motion to reconsider was based upon a theory that Prudential's election not to invoke its right to arbitration during administrative proceedings before the EEOC and the Kansas Human Rights Commission (KHRC) constituted a waiver of such right. Plaintiffs first charge was filed with the EEOC in August of 1993. Thereafter, Plaintiff filed three separate charges with the KHRC in October 1993, August 1994 and April 1995. Prudential participated in these administrative proceedings.

Prudential responded to Plaintiff's Motion to Reconsider Order of Stay by urging that an employer cannot waive its right to arbitrate by participating in proceedings at the administrative level, urging that the EEOC and KHRC proceedings are considered non-adversarial and conciliatory, designed to reach a settlement of issues. The District Court on October 29, 1997 overruled plaintiff's Motion to Reconsider the Order of Stay and Compelling Arbitration, again "for the reasons stated in Defendants' Response to Plaintiff's Motion to Reconsider Order of Stay."

The matter proceeded to arbitration which resulted in a denial of each of Plaintiff's claims. The fairness

or propriety of the arbitration award is not an issue on appeal. The two issues for review are whether the District Court was correct in its original Order of Stay and Compelling Arbitration and its Order denying Appellant's Motion to Reconsider that Order.

This Court reviews the district court's grant of a Motion to Compel Arbitration and its Motion to Reconsider the Order of Stay and Compelling Arbitration *de novo* applying the same legal standard employed by the District Court. *Mid-America Federal Sav. and Loan Ass'n. v. Shearson/American Express, Inc.*, 886 F.2d 1249, 1259. (10th Cir.1989).

Although the orders appealed from provide little guidance to this appellate court, the applicable law is clear. *Armijo*, *Metz*, and fundamental principles of contract law are dispositive.

Clearly the District Court was correct on both issues. This Court, in *Armijo*, addressed the identical issue involving the same Defendant and a U-4 form having the same mandatory arbitration language and affirmed a district court's decision to compel arbitration. There is no compelling factual distinction which would require a different result in this case.

With respect to the argument of waiver, the *Metz* Court specifically discussed the factors to consider in determining whether a party has waived its right to arbitration:
(1)whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into" preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced the opposing party.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

215 F.3d 1336                                                                                        Page 3

215 F.3d 1336, 2000 WL 728821 (C.A.10 (Kan.)), 2000 CJ C.A.R. 3299
**(Cite as: 215 F.3d 1336)**

*3 *Metz*, 39 F.3d at 1489 (citations omitted). We conclude, in considering these factors, that no waiver took place. The Defendant here, when litigation was commenced, filed as its first responsive pleading, a "Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration" meeting the requirement of *Metz*. There was no waiver of arbitration, only a timely demand for it.

In addition, the Supreme Court of the United States, in *Gilmer v. Interstate/Johnson Lane Corp.*, in addressing whether an ADEA claim is precluded from arbitration, stated: "... the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration." Clearly it was not contemplated that participation in administrative proceedings would operate to waive a contractual right to arbitration.

The decision of the District Court is Affirmed.

C.A.10 (Kan.),2000.
Dexter v. Prudential Ins. Co. of America
215 F.3d 1336, 2000 WL 728821 (C.A.10 (Kan.)),
2000 CJ C.A.R. 3299

Briefs and Other Related Documents (Back to top)

• 99-3137 (Docket) (Apr. 27, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 2**

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 1163883 (W.D.Wis.), 86 Fair Empl.Prac.Cas. (BNA) 1298
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents

United States District Court,W.D. Wisconsin.
Jimmie CLAYTON, Plaintiff,
v.
CLEAR CHANNEL METROPLEX, INC.,
Defendant.
No. 00-C-0511-C.

Aug. 10, 2001.

Jeff Scott Olson, for Plaintiff.
Ellen Basting Dizard, Davis & Kuelthau, S.C.,
Milwaukee, WI, for Defendant.

OPINION AND ORDER

*1 This is a civil action for monetary relief in which plaintiff Jimmie Clayton contends that defendant Clear Channel Metroplex, Inc. violated Title VII of the Civil Rights Act of 1964, as amended, 42 U .S.C. § 2000e-2000e(17). Specifically, plaintiff alleges that defendant fired him because he is an African-American man who is married to a white woman and because he had complained to defendant that its allocation of resources was racially discriminatory.

Now before the court is defendant's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, to stay the case and compel arbitration or to transfer the case because it is improperly venued here. Also before the court is plaintiff's motion for leave to file a supplemental declaration in opposition to defendant's motion.

As an initial matter, I note that when the parties were briefing defendant's motion, both of them referred to matters outside the pleadings that they had filed. Defendant filed the arbitration agreement at issue in this case, along with parts of the record

of the administrative proceedings and a copy of an offer of employment from defendant addressed to plaintiff. Plaintiff filed additional portions of the administrative record, including a transcript of the proceedings. In addition, plaintiff has requested permission to supplement these submissions with a declaration of his counsel summarizing the administrative proceedings.

Under Fed.R.Civ.P. 12(b), when a motion is made pursuant to Fed.R.Civ.P. 12(b)(6) and is supported by matters outside the pleadings that the court chooses to consider in connection with the motion, the court must convert the motion to one for summary judgment and give the opposing party a reasonable opportunity to present "all material made pertinent to such a motion by Rule 56." In this case, it is necessary to consider the terms of the arbitration agreement and the record of the administrative proceedings the parties have submitted in connection with defendant's motion. Therefore, the motion must be converted. A grant of plaintiff's motion to file a supplemental declaration will satisfy the court's obligation to allow plaintiff a reasonable opportunity to submit all materials pertinent to the motion.

With respect to the defendant's motion, I conclude that venue is proper in this district. In addition, I conclude that defendant did not waive its right to demand arbitration by failing to raise the issue in the administrative proceedings and that defendant's motion for summary judgment must be granted because the parties' agreement precludes plaintiff from raising his claims in this court.

From the declaration, exhibits and pleadings filed by the parties, I find the following facts to be undisputed.

UNDISPUTED FACTS

Plaintiff Jimmie Clayton is an African-American

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2001 WL 1163883 (W.D.Wis.), 86 Fair Empl.Prac.Cas. (BNA) 1298
(Cite as: Not Reported In F.Supp.2d)

man married to a white woman. Defendant Clear Channel Metroplex, Inc. is a domestic or foreign corporation and owner of WKKV radio station in Greenfield, Wisconsin. Plaintiff was employed at defendant's WKKV station from March of 1996 to September of 1998.

\*2 On May 1, 1998, plaintiff and defendant entered into an arbitration agreement. The agreement states in pertinent part:
employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any legal claim or dispute that either may hereafter have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

The Agreement covers the following potential claims:

4. Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medial condition or other characteristic protected by statute;
5. Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act pf 1964....

On November 12, 1998, plaintiff filed a complaint with the Equal Rights Division of the Department of Workforce Development. Plaintiff alleged that defendant had violated the Wisconsin Fair Employment Act by discriminating in the terms and conditions of plaintiff's employment because of his race, and by discriminating against him because he opposed a discriminatory practice. Filing with the Equal Rights Division filing had the effect of filing

the same complaint with the United States Equal Employment Opportunity Commission.

After the matter before the Equal Rights Division was dismissed for lack of probable cause, plaintiff filed an appeal on the probable cause issue and obtained a hearing before an Equal Rights Division administrative law judge on March 16, 2000. On April 20, 2000, after the Equal Rights Division hearing had been held but before a decision had been issued, plaintiff withdrew his appeal of the finding of no probable cause in order to proceed in federal court. On April 21, 2000, the administrative law judge granted plaintiff's voluntary dismissal of his appeal. Defendant never mentioned the arbitration agreement during the administrative proceedings.

Plaintiff then filed the present action in this court, alleging violations of his rights under Title VII.

OPINION

A. *Venue*

Defendant argues that the Eastern District of Wisconsin is the proper venue under 28 U.S.C. § 1391, the general federal venue statute. Section 1391's provisions apply in civil actions not founded solely on diversity of citizenship "except as otherwise provided by law." However, plaintiff filed this action under Title VII, which contains its own venue provision. *Johnson v. Payless Drug Stores Northwest, Inc.,* 950 F.2d 586, 587 (9th Cir.1991). Suits for violations of Title VII of the Civil Rights Act "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). The parties do not dispute that the unlawful employment practices alleged in this case were committed in Wisconsin. Thus, plaintiff was free to file his action in either the Western District of Wisconsin or the Eastern District of Wisconsin. The case is properly venued here. Defendant's motion to dismiss for improper venue or, alternatively, to transfer the case to the Eastern District of Wisconsin will be denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3

Not Reported in F.Supp.2d, 2001 WL 1163883 (W.D.Wis.), 86 Fair Empl.Prac.Cas. (BNA) 1298
(Cite as: Not Reported in F.Supp.2d)

### B. *Waiver*

*3 Defendant next argues that this case should be dismissed because the arbitration agreement plaintiff signed precludes him from filing his lawsuit in federal court. Plaintiff objects to this motion, contending that because defendant failed to raise the arbitration issue in the administrative proceedings, it has waived its right to do so now.

The arbitration agreement plaintiff and defendant entered into is subject to the Federal Arbitration Act. The Federal Arbitration Act represents "a strong federal policy favoring arbitration as a means of dispute resolution." *Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir.1990). The act provides that a written agreement to arbitrate a dispute arising out of a contract or a transaction involving commerce "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Waiver of the right to arbitration is a ground on which a federal court may refuse to enforce an arbitration agreement. *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Company, Inc.*, 969 F.2d 585, 587 (7th Cir.1992). The matter is largely discretionary and will be overturned only in the presence of clear error. *Id.* at 589. The essential question in determining waiver is whether in light of all the circumstances, the allegedly defaulting party has acted inconsistently with the right to arbitrate. *Id.* at 588. The presumption of arbitrability applicable in cases involving the Federal Arbitration Act dictates that " as matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of contract language itself or allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In support of its contention that defendant has waived its right to arbitration, plaintiff relies on two cases, *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir.1995), and *St.*

*Mary's Medical Center of Evansville, Inc.*, 969 F.2d 585. In both cases, the court of appeals held that the defendant had waived its right to arbitration. In both cases, however, the defendants had participated in litigation in federal court for months before asserting their right to arbitration. In *Cabinetree*, defendant had proceeded with state court litigation, removed the case to federal court and litigated there for months before demanding arbitration. *Cabinetree of Wisconsin, Inc.*, 50 F.3d at 389. The Court of Appeals for the Seventh Circuit held that " an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Id.* at 390. In *St. Mary's*, the defendant had participated in litigation before a federal court for ten months before mentioning arbitration. The court stated that " the defendants had waived their right to arbitration for three reasons: the defendants' delay in demanding arbitration; their participation in discovery; and their decision to file their motion to dismiss" without mentioning arbitration in the motion. *St. Mary's Medical Center of Evansville, Inc.*, 969 F.2d at 587. None of these circumstances is present in this case.

*4 Defendant asserted its right to arbitration in direct response to the initiation of litigation in this court, rather than litigating first. Plaintiff has cited no support for its contention that the failure to request arbitration during proceedings before the Equal Rights Division waives the right to arbitration. I see no apparent reason why it should. In neither *St. Mary's* nor *Cabinetree* did the court of appeals suggest that a party loses its right to arbitrate even if it waits until a suit has been filed against it. The court did say in *Cabinetree* that ordinarily invocation of a nonarbitral forum will operate as a waiver of arbitration; it did not say that going through an an Equal Rights Division or EEOC proceeding would operate in the same way. Indeed, in light of the fact that an arbitration agreement is no defense to a proceeding before the EEOC, it would have been fruitless for defendant to have asserted its agreement in the Equal Rights Division forum. *See Brennan v. King*, 139 F.3d 258, 263 (1st Cir.1998) (arbitration agreement is not relevant defense before EEOC). *See also Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4

Not Reported in F.Supp.2d, 2001 WL 1163883 (W.D.Wis.), 86 Fair Empl.Prac.Cas. (BNA) 1298
(Cite as: Not Reported in F.Supp.2d)

1223 (11th Cir.2000) (upholding district court's
decision that defendant had not waived its right to
arbitration by failing to raise the arbitration issue
with Equal Employment Opportunity Commission).

The facts show that plaintiff agreed to arbitrate any
claim against defendant for discrimination because
of race protected by statute and any claim of
retaliation or discrimination against the defendant
for opposing the violation of any federal, state or
local statute or ordinance, including but not limited
to Title VII of the Civil Rights Act pf 1964. I
conclude that because this dispute is subject to an
arbitration agreement and because defendant has
not waived its right to demand arbitration under the
agreement, defendant's motion for summary
judgment must be granted.

                    ORDER

IT IS ORDERED that

1) Defendant's motion to dismiss for improper
venue or, alternatively, to transfer the case to the
Eastern District of Wisconsin is DENIED;

2) Plaintiff's motion for leave to file a supplemental
declaration is GRANTED;

3) Defendant's motion to dismiss pursuant to
Fed.R.Civ.P. 12(b)(6) is converted to a motion for
summary judgment; and

4) Defendant's motion for summary judgment is
GRANTED.

The clerk of court is directed to enter judgment for
defendant and to close this case.

W.D.Wis.,2001.
Clayton v. Clear Channel Metroplex, Inc.
Not Reported in F.Supp.2d, 2001 WL 1163883
(W.D.Wis.), 86 Fair Empl.Prac.Cas. (BNA) 1298

Briefs and Other Related Documents (Back to top)

• 3:00C00511 (Docket) (Aug. 21, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 3**

**Westlaw.**

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 936850 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
CYCLE SPORT, LLC d/b/a Cycle Shop
v.
DINLI L.P.
No. Civ.A. 03-3000.

April 29, 2004.

Regel Louis Bisso, Conroy Law Firm, Metairie, LA, for Plaintiff.
Craig Lewis Caesar, Anne D. LeJeune, McGlinchey Stafford, PLLC, New Orleans, LA, for Defendant.

ZAINEY, J.
*1 Before this Court is defendant Dinli, L.P.'s Motion to Compel Arbitration and Stay Proceedings (Rec.Doc. 3). This motion, which is opposed by plaintiff Cycle Shop, is set for hearing on April 7, 2004, on the briefs. For the reasons that follow, this motion is GRANTED.

*Background*

On October 1, 2002, Dinli entered into a dealer agreement with Cycle Shop for the St. Tammany Parish territory.[FN1] This agreement contains an arbitration clause which reads as follows:

> FN1. The Agreement stated "Dinli and dealer (Cycle Sport) agree that dealer's area of primary responsibility for the sale and service of Dinli's product shall be 30 miles radius of Dealer's business location."

10. Disputes. Any claim, dispute or controversy arising out of or in connection with or relating to this Agreement or the breach or alleged breach thereof shall be submitted by the parties to binding

arbitration in the City of Dallas, State of Texas, United States of America, before a single arbitrator agreeable to both parties. If the parties cannot agree on a designee within six (6) weeks after the arbitration is requested in writing by either of them, the arbitration shall proceed in Dallas, Texas, United States of America, before a single arbitrator appointed by the American Arbitration Association and under the rules then obtaining of that Association. The award shall be rendered in such form that judgment may be entered thereon in any court having jurisdiction.

In October of 2003, Cycle Shop filed this action for damages alleging that Dinli had violated Louisiana Revised Statute 32:771 *et seq* and the Louisiana Unfair Trade Practices and Consumer Protection Law, Louisiana Revised Statute 51:1401 *et seq*. It is alleged that by August 2003, Dinli was supplying motorcycles to other dealers in the Cycle Shop's " area of responsibility." [FN2] In addition to this pending litigation, Cycle Shop also filed a complaint in December of 2003 with the State of Louisiana Used Motor Vehicle and Parts Commission. The Commission rendered a judgment on this complaint on February 27, 2004.

> FN2. "Area of responsibility" means a geographical area assigned by zip code, parish, or mile radius in a franchise, sales, or contractual agreement existing between a manufacturer, distributor, wholesaler, distributor branch, or factory branch and a marine, motorcycle, or all-terrain vehicle dealer. La. R.S. 32:771(2)(a).

*Parties' Contentions*

Defendant requests that this Court compel arbitration, pursuant to 9 U.S.C. § 4, as to all claims asserted by plaintiff Cycle Shop and stay all proceedings in this matter while the binding arbitration is pending. In the alternative, defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2

Not Reported in F.Supp.2d, 2004 WL 936850 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

requests that this Court stay the proceedings in this case until the resolution of the ongoing state administrative action. Because the judgment has already been rendered in the state action, this Court shall only address the issue of compelling the arbitration and staying the proceedings in that respect.

The plaintiff asserts that its claims against Dinli do not stem from their franchise agreement which contains the arbitration clause but rather Dinli's violation of Louisiana law. Cycle Shop asserts that these violations occurred because a contract existed, but did not arise out of the contract, and therefore are not subject to the mandatory arbitration clause. The plaintiff has also asserted that the defendant has waived mandatory arbitration by its involvement in this litigation and the state administrative action. The plaintiff also contends that the State's consideration of its complaint some how serves as a "legal constraint, external to the parties' agreement that forecloses arbitration." The plaintiff also asserts that if this Court was to compel arbitration in this case that the proper venue for such arbitration in this case is in Louisiana, rather than Texas.

*Analysis*

**\*2** The first step in evaluating a motion to compel arbitration is to determine whether the parties agreed to arbitrate. *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002). This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of the arbitration agreement. *Id.* (citing *Webb v. Investacorp,* 89 F.3d 252, 258 (5th Cir.1996)). Ambiguities or uncertainties as to whether a particular dispute falls within the scope of an arbitration agreement are resolved in favor of arbitration. *Id.* (citing *Volt Info Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

Ordinary contract principles apply to the determination of whether a valid agreement to arbitrate exists between the parties. *Id.* (citing *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389 (8th Cir.1984)

). Thus, the strong federal policy favoring arbitration is triggered only after the Court determines that a binding arbitration agreement exists. *See Id.*

The plaintiff concedes in his opposition that the dealer agreement between Cycle Shop and Dinli contains an arbitration clause which the Fifth Circuit would consider broadly written. The plaintiff instead asserts that this dispute is not covered by that broad arbitration clause.

In *Snap-on Tools Corporation v. Mason,* 18 F.3d 1261 (5th Cir.1994), the Court interpreted a similar arbitration clause contained in a Dealer Agreement. The plaintiff filed a motion to compel arbitration which was denied by the district court and reversed by the Fifth Circuit. In that case, the defendant Mason was asserting various tort claims [FN3] against the plaintiff Snap-On Tools in Texas state court. *Id.* at 1263. The Court found that because all of the tort claims arose out of the business relationship between the Masons and Snap-On Tools they were subject to the arbitration agreement. *Id.* at 1265.

> FN3. In the state court complaint, the Masons allege fraudulent inducement into the dealership contract, fraud during the executory time of the contract, breach of fiduciary duty, and negligent and intentional infliction of emotional distress.

The facts of this case are very similar to the facts of the litigation currently before this Court. Both cases arise out of conflicts and claims relating to a "Dealer Agreement." Both "Dealer Agreements" contain broad arbitration clauses. Even though the claims asserted sound in tort, it does change the nature of the conflicts and the relationship between the parties.

In *Ford v. Nylcare Health Plans of The Gulf Coast,* 141 F.3d 243 (5th 1998), the Fifth Circuit promulgated the test for whether or not a tort claim is sufficiently related to an agreement to be arbitrable. The Court stated:
The test focuses on the factual allegations in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 936850 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

complaint instead of the legal labels attached to the causes of action. It does so, however, not to identify whether the facts in support of the action will implicate the agreement as an item of evidence, but to uncover whether an action formally labeled a tort is in essence a breach of contract claim or based on a breach of contract ... Basing the arbitrability of an action merely on the legal label attached to it would allow artful pleading to dodge arbitration of a dispute otherwise "arising out of or relating to" (or legally dependent on) the underlying contract. To avoid this contrivance, courts look at the facts giving rise to the action and to whether the action " could be maintained without reference to the contract."FN4

> FN4. *Id* at 250-51 (*citing X.L.INs. Co v. Hartford Accident and Indemnity Co,* 918 S.W. 687, 689 (Tex App.1996); *Valero Energy Corp. v. Wagner & Brown,* 777 S.W. 564, 566 (Tex App 1989)). In the Dinli/ Cycle Shop dealer agreement, a choice of law clause is contained in Article 11, which designates Texas law as the law governing the relationships between the parties.

*3 Cycle Shop's claims arise directly from its dealer agreement with Dinli. They are therefore subject to the arbitration agreement.

Cycle Shop also asserts that Dinli has waived its right to invoke arbitration. Although the Fifth Circuit recognizes that the right to compel arbitration is waivable, waiver of arbitration is not a favored finding, and there is a presumption against it. *Williams v. Cigna Financial Advisors, Inc.,* 56 F.3d 656, 661 (5th Cir.1995) (*citing Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494 (5th Cir.1986)). The party claiming waiver has a heavy burden but waiver will be found where the party seeking arbitration substantially invokes the judicial process to the detriment of the other party. *Frye v. Paine, Webber, Jackson & Curtis, Inc.,* 877 F.2d 396, 398 (5th Cir.1989) (*citing Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156 (5th Cir.1986)). The plaintiff has not come close to

defeating this presumption.

While the defendant has participated in the state administrative hearing, this act alone cannot serve as a waiver of its right to arbitrate the dispute, nor can the defendant's participation in this current litigation which has been minimal. The plaintiff has invoked all of this litigation and the Court does not find that Cycle Shop has been prejudiced in any way by Dinli's conduct. This Court finds that defendant has not waived its right to arbitration.

The plaintiff contends that any arbitration in this matter should be conducted in Louisiana rather than Texas. The arbitration clause in the dealer agreement states clearly that any arbitration is to occur in Dallas, Texas. It is a clause of the contract and the contract is the law between the parties. The federal policy behind the Federal Arbitration Act " is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info Sciences, Inc.,* 489 U.S. at 476. There is no question from the unambiguous language of the contract that the parties intended to arbitrate any matters related to the contract in Texas.

ACCORDINGLY;

IT IS ORDERED that defendant Dinli, L.P.'s Motion to Compel Arbitration and Stay Proceedings (Rec.Doc. 3) is GRANTED. This matter is STAYED pending arbitration. The Clerk shall CLOSE this matter ADMINISTRATIVELY pending further orders of the Court.

E.D.La.,2004.
Cycle Sport v. Dinli L.P.
Not Reported in F.Supp.2d, 2004 WL 936850 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3639820 (Trial Motion, Memorandum and Affidavit) Defendant's Dinli, L.P.'s Reply Memorandum in Further Support of Motion to Compel Arbitration and Stay Proceedings (Apr. 5, 2004) Original Image of this Document (PDF)
• 2004 WL 3639819 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2004 WL 936850 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Motion to Compel Arbitration and Stay Proceedings
(Mar. 31, 2004) Original Image of this Document
(PDF)
• 2004 WL 3639818 (Trial Pleading) Answer of
Defendant Dinli L.P. to Complaint of Cycle Sport,
LLC d/b/a Cycle Shop (Feb. 11, 2004) Original
Image of this Document (PDF)
• 2004 WL 3640105 (Trial Motion, Memorandum
and Affidavit) Defendant's Dinli, L.P.'s Motion to
Compel Arbitration and Stay Proceedings (Feb. 11,
2004) Original Image of this Document (PDF)
• 2003 WL 24216919 (Trial Pleading) Complaint
(Oct. 24, 2003) Original Image of this Document
(PDF)
• 2:03CV03000 (Docket) (Oct. 24, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.